**B.A.L., Appellant,**

*v.*

**The EDNA GLADNEY HOME, Appellee.**

**No. 2–84–111–CV.**

Court of Appeals of Texas,
Fort Worth.

Oct. 11, 1984.

Michael W. Berg, Fort Worth, for appellant.

Wynn, Brown, Mack, Renfro & Thompson, and William M. Schur, Fort Worth, for appellee.

Before FENDER, C.J., and HUGHES and JORDAN, JJ.

## OPINION

JORDAN, Justice.

In this termination of parental rights case, the appeal is by the mother of a child born out of wedlock at The Edna Gladney Home in Fort Worth on February 10, 1984. Suit was filed by the Home on February 13, 1984 to terminate the parental rights of B.A.L., mother of the child, and those rights were terminated by the trial court on February 22, 1984, after the mother had executed an affidavit of relinquishment of parental rights before two witnesses and a notary public on February 14, 1984. Motion for new trial was filed by appellant on March 9, 1984, amended on March 23, 1984, and heard by the trial court for two full days beginning April 16, 1984. On April 19, 1984, the court overruled the amended motion for new trial and appellant now complains by eleven points of error of the action of the trial court in terminating her parental rights and in overruling her amended motion for new trial. The hearing on the amended motion for new trial was to the court alone and no findings of fact or conclusions of law were either requested or filed.

The natural father of the child signed a waiver or disclaimer of any interest in or rights to the child, which waiver was filed with the court on February 21, 1984, before the mother's parental rights were terminated. He is not involved in this appeal.

We affirm.

B.A.L., a nineteen-year-old girl from New York, pregnant and unmarried, after first considering then rejecting plans for an abortion, was referred to The Edna Gladney Home by a referral organization known as Birth Right. She left her family home in New York without disclosing to her mother or two sisters, or anyone else in her family, the fact that she was pregnant and entered The Edna Gladney Home on November 8, 1983. She resided there, with her pre-natal care and all her living expenses paid for by the Home until her baby girl was born February 10, 1984. She was counselled and assisted by social workers at The Edna Gladney Home. Although B.A.L. testified at the hearing on the amended motion for new trial that the emphasis was on adoption while she resided at the Home and now claims on appeal that she was overreached and unduly influenced, there was considerable testimony that all her options were explained to her and she was given the clear choice of either keeping her baby or having it placed for

adoption by the Home. The trial court, sitting as the trier of fact, accepted the testimony that she had a clear choice.

None of B.A.L.'s immediate family knew of her condition until February 8, 1984, when her mother received a letter from her advising her of her situation. On February 9 she talked to her sister Lucille and her mother, both of whom assured her of their support and her entire family's support. Another sister, Maria, was not advised of her pregnancy at that time. At all times after these several telephone conversations, appellant knew that she would have her family's support if she wanted to raise the baby and not have it placed for adoption.

After the birth of the baby on February 10, 1984, the mother, on February 14, executed the affidavit of relinquishment of parental rights, before two witnesses and a notary public, Elaine Brown, an employee of the Home. The relinquishment affidavit, which B.A.L. admitted she read and understood, stated, among other things, that she felt it was in the child's best interest that it be placed for adoption, and she could not meet the child's physical and emotional needs as a parent. The relinquishment affidavit also contained this language typed in bold, capitalized letters:

I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT UNTIL I HAVE READ AND UNDERSTOOD EACH WORD, SENTENCE, AND PARAGRAPH IN IT. I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF THERE IS ANY THOUGHT IN MY MIND THAT I MIGHT SOME DAY SEEK TO ESTABLISH OR REESTABLISH ANY RELATIONSHIP WITH THE CHILD.

She admitted at the hearing on the motion for new trial that she knew at the time she signed the affidavit that if she entertained any thoughts at all about keeping her baby and raising it she should not sign that affidavit, and that "once I signed, that was it".

She also testified at the hearing that when she signed the relinquishment affidavit, she believed it was best for her and for her baby to sign it and give the baby up for adoption, and before she signed the affidavit she never told her caseworker or anyone else at the Home that she was considering keeping the baby.

Appellant's primary attack on the judgment of the trial court, contained in her first four points of error, is that the trial court erred in overruling her amended motion for new trial because the evidence "raised fact questions" for the trier of fact with respect to The Edna Gladney Home's use of undue influence over her in "their methods of granting her aid," "in the way of bringing up expenses," "in taking advantage of her youth and emotional distress," and by overreaching appellant by requiring her to sign the relinquishment affidavit four days after the birth of her child. These contentions are not only rather vaguely stated but the arguments in the brief are cloudy and unclear.

Even if appellant is correct in her assertion that the evidence raised fact questions on the issue of undue influence and overreaching, those fact questions were decided against her by the trial judge sitting as the trier of facts.

Appellant seems to argue that because the Home aided and abetted her by furnishing medical care and financial support for living expenses and because she was young, alone, pregnant and emotionally distraught that there "is a possibility of undue influence," and that the Home "overreached" her by having her sign the relinquishment affidavit four days after the birth of the child.

In answering the argument of appellant as to undue influence and overreaching, we must decide from the evidence in the record of the hearing on the motion for new trial if there is sufficient evidence to support the judgment of the trial court and its implied findings of fact in support thereof. In a trial to the court where no findings of fact or conclusions of law are filed or requested, the judgment of the trial

court implies all necessary findings of fact in support thereof. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980).

■ Where the implied findings of fact are supported by the evidence, it is the duty of the appellate court to uphold the judgment on any theory of law applicable to the case. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977); *Ellis v. Waldrop*, 627 S.W.2d 791 (Tex.App.—Fort Worth 1982), *rev'd on other grounds*, 656 S.W.2d 902 (Tex.1983). This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939); *Rheiner v. Varner*, 627 S.W.2d 459, 462 (Tex.App.—Tyler 1981, no writ).

■ These implied findings may be challenged by "no evidence" and "insufficient evidence" points and when so challenged, the standard of review to be applied by this court is the same as that to be applied in the review of jury findings or a trial court's findings of fact. Appellant here does not challenge the trial court's judgment on either of these points; she simply says there was evidence to support findings of undue influence and overreaching. She says "if there is the slightest possibility of undue influence the court must order a new trial." This is just not the law.

■ The question of whether there is sufficient evidence in this case to support the judgment of the trial court must be based on whether that evidence is "clear and convincing". It has been held that a judgment to terminate involuntarily a person's parental rights must be based on clear and convincing evidence and not on the Family Code standard of preponderance of the evidence applicable to custody cases. *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599 (1982); *Richardson v. Green*, 677 S.W.2d 497 (1984); *In Interest of G.M.*, 596 S.W.2d 846 (Tex.1980).

In support of her contention that she was unduly influenced by The Edna Gladney Home at the time she signed the relinquishment affidavit, B.A.L. cites *Methodist Mission Home v. N. . . . A. . . . B. . . .*, 451 S.W.2d 539 (Tex.Civ.App.—San Antonio 1970, no writ), which affirmed a jury finding in the trial court that the execution of the relinquishment affidavit by the appellee in that case was unduly influenced by the placement agency. However, in *Methodist Mission Home*, the parent, according to the evidence, had been subjected to an intensive five-day period of campaigning designed to persuade her to give up her child. We do not have that situation in this case. *Id.* at 540.

■ The court in *Methodist Mission Home*, said that what constitutes "undue influence" depends on the particular facts and circumstances of each case viewed in the light of applicable principles of law. *Id.* at 543. The court also said "[i]t may be conceded that calling to the attention of an unwed mother the considerations which tend to show that her best interest, and that of her child, would best be served by placement of the child for adoption cannot be branded as undue influence, even though she is thereby induced to give up her child." *Id.* at 543. Influence cannot be branded as "undue" merely because it is persuasive and effective; the law does not condemn all persuasion, entreaty, importunity, and intercession. *Robinson v. Stuart*, 73 Tex. 267, 11 S.W. 275 (1889).

■ After reviewing the record of the hearing on the motion for new trial and viewing it in the light of the standards set forth above, we have no trouble in holding that there was clear and convincing evidence to support the judgment of the trial court and the findings of fact necessarily implied to support that judgment. Under this evidence it is obvious, and the trial court was clearly entitled to find, as it did, that appellant signed the relinquishment affidavit voluntarily, intelligently, and knowingly, she was aware that she could keep her baby if she so desired with the full support, financial and otherwise of her own family, and she made her own choice to place the baby for adoption without any

undue influence, pressure or overreaching on the part of The Edna Gladney Home. The evidence shows plainly that this young girl changed her mind and decided she wanted to keep her baby only after she talked, after the birth of the baby, to her sister Maria in New York. Maria insisted B.A.L. could retain the baby and raise it herself if she would just tell the Edna Gladney people that was her desire.

The situation here with respect to the signing of the relinquishment affidavit is no different than the one before the Supreme Court in *Brown v. McLennan County, Etc.*, 627 S.W.2d 390 (Tex.1982), where it was said the affidavit clearly set out that appellant was relinquishing all parental rights; suit would be filed to terminate her rights; and the act (relinquishment) was irrevocable. *Id.* at 390. The court also said while it recognized the parent-child relationship as a basic civil right due a high degree of protection, that when a parent voluntarily terminates this parent-child bond, the best interests of the child become paramount. *Id.* at 393. "Once that child has been surrendered to a licensed agency for adoption, the safety, education, care and protection of the child, not the contentment or welfare of the parent, is of utmost importance .... Children voluntarily given up in compliance with the Family Code, as was done in this case, *cannot be snapped back at the whim of the parent.*" *Id.* at 393–94. (Emphasis added.)

 The essence of an "undue influence" claim is overcoming the free will of an individual and substituting the will of another, thereby causing a person to do an act which he would not otherwise have done. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex.1963). "Overreaching" is tricking, outwitting, or cheating a person into doing an act which he would not otherwise have done. There simply is no evidence in this record that The Edna Gladney Home overcame the will of appellant or tricked, outwitted, or cheated her into doing anything she would not otherwise have done. She had decided to relinquish the baby and have it placed for adoption before she first contacted the Home. She continued to plan on adoption for the child after entering the agency in November, 1983, right up to the time of signing the relinquishment affidavit and surrendering her parental rights to her child. That was her decision and hers alone. She changed her mind after the baby was born and after talking to her sister Maria. Points of error one through four are overruled.

 In her fifth point of error, appellant says that a new trial should have been granted because the notary public who notarized her relinquishment affidavit was an employee of The Edna Gladney Home. Appellant's theory on this point is again rather vague and unclear but she seems to contend that Elaine Brown, the employee-notary public had a financial interest in appellant's execution of this affidavit. The evidence does not support this contention, but shows instead that the notary was a salaried employee of the Home, that her salary was fixed and in no way related to the number of affidavits she notarizes, and that she is neither an officer or director of the Home. Appellant's argument on this point has been rejected in *Director, Dallas County Child Welfare v. Thompson*, 667 S.W.2d 282 (Tex.App.—Dallas 1984, no writ). Point of error five is overruled.

By her ninth point of error appellant argues the trial court erred in failing to appoint a guardian ad litem or an attorney ad litem for the child at the hearing on the motion for new trial. Appellant contends that TEX.FAM.CODE ANN. sec. 11.10(a) (Vernon 1975), requires such an appointment, unless, among other things, the court finds that the interest of the child will be represented adequately by a party to the suit and is not adverse to that party. We note that B.A.L. does not complain of the failure of the court to appoint a guardian ad litem at the original termination hearing. The termination judgment itself includes a recitation that "the interests of the child have been and continue to be adequately represented by petitioner (The Edna Gladney Home) and are not adverse

to that of Petitioner ...." The mother of the child did not request the appointment of a guardian or attorney ad litem to represent the child at any time before filing her brief in this court, nor did she request findings of fact or conclusions of law with respect to the new trial proceedings.

This court has previously held, in a similar fact situation involving the surrender of a child for adoption where a relinquishment affidavit had been signed by the mother, that the trial court did not err in failing to appoint a guardian ad litem for the child. *In Interest of D.E.W.*, 654 S.W.2d 33, 34 (Tex.App.—Fort Worth 1983, writ ref'd n.r. e.). The cases cited in appellant's brief in support of this point of error are all distinguishable from the case here. Most of those cases involved termination of a father's rights on grounds of non-support, and did not involve voluntary relinquishment, as here.

We hold that in the absence of a request for the appointment of a guardian ad litem to represent the child at the new trial hearing, and in the absence of a request for written findings of fact and conclusions of law, the trial court did not err in failing to appoint a guardian ad litem for the child or in failing to make written findings of fact concerning the adequacy of the child's representation at the new trial hearing. Point of error nine is overruled.

By her point of error eleven, B.A.L. claims that because her termination of parental rights case was heard along with seven other such cases at the same time, with the evidence presented at the hearing applicable to all eight cases, she has been denied due process of law. It is true that on February 22, 1984, eight cases involving termination of parental rights following execution of relinquishment affidavits were heard at once. We point out, however, there was testimony from a caseworker from the Home to the effect that: in *each of the cases* before the court at that time the child's mother was either unable or unwilling to meet the child's emotional and physical needs; neither the mother or father of the child was able to provide a suitable environment for the child; and *in each case each parent* of the child had by his or her actions clearly demonstrated that adoption would best meet the child's needs. Further, B.A.L., in the relinquishment affidavit, stated that she could not meet the child's physical and emotional needs as a parent and it would be in the best interest of the child if it were placed for adoption. (Emphasis added.) She also said in the affidavit that she did not want to testify at the termination hearing and that she waived service of process, return of citation and notice in the suit.

We hold under the circumstances of this case, and in view of the testimony with regard to each case involved and in view of the relinquishment affidavit, appellant's right to due process of law was not violated. Point of error eleven is overruled.

Other points of error raised in appellant's brief all relate at least generally to her first four points of error, with respect to undue influence and overreaching, and have been previously adequately discussed in this opinion. All remaining points of error not here specifically written upon are overruled.

The judgment of the trial court is affirmed.