No. 04-97-00438-CV



In the Interest of Baby Girl BRUNO, a Minor Child




From the 224th Judicial District, Bexar County, Texas


Trial Court No. 97-PA-00189


Honorable David Peeples, Judge Presiding



Opinion by: Karen Angelini, Justice

Concurring opinion by: Tom Rickhoff, Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Karen Angelini, Justice


Delivered and Filed: July 8, 1998


AFFIRMED


 Janie Bruno appeals a decree terminating her parental rights. After Bruno gave birth to a
baby girl, she signed an Irrevocable Affidavit of Relinquishment of Parental Rights to a Licensed
Child Placing Agency. Based on the affidavit, the trial court entered a decree terminating Bruno's
parental rights, and the baby was placed with an adoptive family with whom she has since lived.
Bruno raises four points of error contesting the validity of the decree. First, she contends that the
affidavit of relinquishment is void because it was incorrectly notarized and witnessed. She further
complains of procedural irregularities in the trial court. And finally, Bruno challenges the
sufficiency of the evidence to support the decree. We affirm the judgment of the trial court.

Factual and Procedural Background


 On January 24, 1997, Janie Bruno gave birth to a baby girl. Bruno was nineteen years old,
unmarried, and living with her parents while attending college. Bruno concealed her pregnancy from
her family and friends. When she went into labor, she drove herself to the hospital and informed
hospital staff that she intended to place the baby for adoption. She instructed hospital staff not to
allow any visitors in her room and not to disclose any information to her family members.

 After the delivery, Bruno spoke with Cindy Moody, the hospital's social worker, and again
expressed her desire to place the baby for adoption. Moody testified that she spoke with Bruno about
the adoption procedure and presented her with other options. Moody informed Bruno that if she
chose to place her baby for adoption, the decision would be irrevocable. According to Moody,
Bruno was completely confident in her decision to place her baby for adoption. Bruno signed a
document permitting Moody to contact an adoption agency on her behalf, and Moody contacted
Adoption Affiliates at Bruno's request.

 Later that day, Jan Couve, an Adoption Affiliates representative, contacted Bruno by
telephone and confirmed Bruno's desire to place her baby for adoption. Couve explained the
irrevocable nature of such a decision. When asked if she would like someone from Adoption
Affiliates to come and visit with her in person about the adoption procedure, Bruno said that she
would.

 Monica Martinez, another Adoption Affiliates employee, met with Bruno at the hospital on
January 25, 1997. Bruno again expressed her desire to place her baby for adoption. Martinez
explained the adoption process and the legal documents necessary to initiate the process. Bruno
signed several preliminary documents, including a document informing her of her rights and
responsibilities as a birth mother, a document identifying the two probable birth fathers, and an HIV
release. She also signed a document consenting to the release of the baby by the hospital to
Adoption Affiliates.

 Martinez discussed with Bruno the irrevocable nature of an affidavit of relinquishment and
informed her that she could not sign such an affidavit in the forty-eight hours following the baby's
birth. Accordingly, Martinez advised Bruno to think about what she wanted to do and to call
Adoption Affiliates when she had made a decision. Following her visit with Martinez, Bruno was
discharged from the hospital.

 On January 26, 1997, Bruno spoke with Jan Couve by telephone. She reconfirmed her desire
to place her baby for adoption, and made arrangements for Couve to pick her up from her college
the following day so that she could sign the papers necessary to terminate her parental rights and
begin the adoption process. On January 27, 1997, Couve picked Bruno up from her college and
drove her to the Adoption Affiliates office. At the office, Couve read the affidavit of relinquishment
aloud to Bruno. Couve explained the affidavit to Bruno and told her that she was waiving her right
to appear in court and to receive additional paperwork regarding the adoption process. Bruno was
"very clear about wanting to proceed."

 Bruno reviewed and signed the affidavit in front of two witnesses, and the affidavit was
notarized by Couve. In bold type, the affidavit states:

 I realize that I should not sign this affidavit until I have read and understood each
word, sentence and paragraph in it. I realize that I should not sign this affidavit of
relinquishment if there is any thought in my mind that I might someday seek to
change my mind. I realize that I should not sign this affidavit of relinquishment of
parental rights if I am not thinking clearly because of illness, medication , my
emotional state or any other reason. I know that once I sign this document I will no
longer be legally considered to be the parent of my child, I know that by signing this
document and terminating my parental rights that I am acting in the best interest of
my child. I confirm that I have read this affidavit of relinquishment, I understand it,
and I desire to sign it.


 Bruno initialed each line of the preceding paragraph. In the following weeks, Bruno
cooperated with Adoption Affiliates in locating the two possible birth fathers. Once these two men
were located and had signed the necessary documents waiving interest in the child, Adoption
Affiliates petitioned the court for termination of the parental rights of Bruno and the two possible
fathers. After considering the documents presented and the best interest of the child, the trial court
entered a decree of termination on February 10, 1997. Shortly thereafter, the baby was placed with
her adoptive family where she continues to live.

 In the meantime, Bruno's parents received a bill for pediatric services from the hospital.
They confronted Bruno and discovered that she had given birth to a child and placed her for
adoption. As a result of this confrontation, Bruno contacted Adoption Affiliates on February 11,
1997, and informed them that she had changed her mind and that her parents would adopt the baby.
She was informed that the affidavit of relinquishment was irrevocable and that the baby could not
be returned to her.

 Bruno filed a motion for new trial seeking to set aside the decree of termination. The trial
court conducted a hearing at which Bruno, her mother, Moody, Martinez, Couve, and others
testified. Bruno testified that she did not voluntarily execute the affidavit of relinquishment because
it was not adequately explained to her and she was pressured by her fear of disappointing her parents.
 The trial court denied Bruno's motion for new trial.


Argument and Authority


A. Validity of the Affidavit

 1. Notarization

 In her first point of error, Bruno argues that her Affidavit of Relinquishment of Parental
Rights to a Licensed Child Placing Agency and other related documents are "null and void" because
they were improperly notarized by employees of Adoption Affiliates. Bruno claims that because
Adoption Affiliates was a party to the termination proceeding, its employees and representatives
were disqualified from acknowledging the documents supporting the termination.

 The evidence in this case does not support Bruno's contention. The fact that a notary public
is in the employ of a party to a transaction will not necessarily disqualify her from notarizing a
document related to that transaction unless the notary (1) has a direct pecuniary or beneficial interest
in the transaction, or (2) identifies herself with the transaction by signing a written instrument as an
agent for one of the parties. Director, Dallas County Child Welfare v. Thompson, 667 S.W.2d 282,
283 (Tex. App.--Dallas 1984, no writ); B.A.L. v. Edna Gladney Home, 677 S.W.2d 826, 832 (Tex.
App.--Fort Worth 1984, writ ref'd n.r.e.).

 The only documents relevant to Bruno's argument are those relied upon by the trial court in
terminating Bruno's parental rights. By its terms, the decree of termination, as it pertains to Bruno,
was based upon Adoption Affiliates' petition for termination, Bruno's affidavit of relinquishment,
and the best interest of the child. Adoption Affiliates' attorney executed the petition for termination,
and Jan Couve notarized the affidavit of relinquishment. Neither Jan Couve nor any other Adoption
Affiliates employee identified herself with the termination of Bruno's parental rights by signing any
of the relevant documents as an agent of Adoption Affiliates.

 Further, the record contains no evidence that Jan Couve had any pecuniary or beneficial
interest in the termination of Bruno's parental rights. Couve denied any such interest via affidavit.
She acted merely as a salaried employee of Adoption Affiliates during this entire transaction. Her
salary is not based on the number of relinquishments in which she was involved nor on the number
of affidavits she notarized. She receives no fees for notary services. Couve is neither an officer nor
a director of Adoption Affiliates. In her capacity as associate director, she is charged with assisting
in the implementation of policies created by the board of directors. She had no personal interest in
the termination of Bruno's parental rights.

 Under these circumstances, we find that Couve was not disqualified from notarizing the
documents upon which the decree of termination is based.

2. Witnesses

 In her second point of error, Bruno contends that the trial court erred in considering her
affidavit of relinquishment because it was not made knowingly and voluntarily before two credible
witnesses. Bruno argues that the affidavit of relinquishment is invalid because the witnesses did not
know her well enough to determine whether she was signing it voluntarily.

 Specifically, Bruno points to Couve's testimony that the witnesses were not informed of the
contents of the document signed by Bruno. Couve testified that she asked the two individuals to
witness the execution of some "legal documents" without given them further details. She did this
out of respect for Bruno's concerns about confidentiality. Bruno also notes that she was not asked
to reread the document in front of the witnesses and she was not introduced to the witnesses. Under
these circumstances, Bruno argues that the witnesses did not know whether she signed her correct
name, much less whether she signed the document knowingly and voluntarily.

 Bruno's argument is without merit. The record reflects that, in the presence of the two
witnesses, Bruno was asked to raise her right hand, swear to tell the truth, verify her name, provide
identification, acknowledge that she read the document, acknowledge that she signed it freely and
voluntarily for the purposes stated in the document, verify that the document was true and correct,
acknowledge the importance of the document, and acknowledge that her signature on the document
was final. She was given the opportunity to ask any questions. She was also asked if she had read
each and every line before she initialed it. She then, still in the presence of the witnesses, initialed
and signed the document in the appropriate places.

 The Texas family code requires that an affidavit of relinquishment of parental rights be
witnessed by two credible persons. Tex. Fam. Code Ann. § 161.103 (a)(2) (Vernon 1996).
However, there is no requirement that the credibility of the witnesses be affirmatively proven or even
that the witnesses be present when the document is signed. In Interest of D.E.W., 654 S.W.2d 33,
35 (Tex. App.--Fort Worth 1983, writ ref'd n.r.e.) (presence); See In re B.B.F., 595 S.W.2d 873, 875
(Tex. Civ. App.--San Antonio 1980, no writ) (credibility). If the witnesses need not even be present
when the affidavit is signed, the circumstances in this case clearly indicate that the affidavit was
properly witnessed. See In re B.B.F., 595 S.W.2d at 875 (holding that signed, witnessed, and
notarized affidavit of relinquishment is prima facie evidence of its validity).

B. Procedural Requirements

 In her third point of error, Bruno identifies several procedural errors that she contends entitle
her to a new trial. First, she argues that, while she waived her right to receive service of citation, she
was still entitled to receive a copy of the petition for termination pursuant to Tex. R. Civ. P. 119.
However, by its very terms, Rule 119 requires the delivery of the original petition only when a party
either accepts service or waives the issuance of citation after suit is brought. It does not apply in
cases of pre-suit waiver. Further, in her affidavit of relinquishment, Bruno clearly stated, "I do not
want to be informed further about the lawsuit, and I waive and give up my right to be given notice
about anything going on in the lawsuit" and "I fully understand that I will not be further informed
about the termination of parental rights suit." In light of this language, Bruno clearly waived her
right to notification or information, in any form, of the termination proceeding. She can not now be
heard to complain that she did not receive a copy of the petition for termination.

 Bruno also contends that, although the family code allows pre-suit waivers of citation, it does
not do away with the requirement that the citation, with proof of service, be on file for ten days
before judgment is entered, as required by Tex. R. Civ. P. 107. This argument is illogical. If a party
waives service of citation, there is obviously no need for a citation to be issued, and there will
certainly be no proof that citation was served. If a citation does not exist, it cannot be on file ten
days before judgment is entered. Accordingly, Tex. R. Civ. P. 107 does not apply in this case or any
other pre-suit waiver case.

C. Sufficiency of the Evidence

 In her fourth point of error, Bruno challenges the sufficiency of the evidence to support the
decree of termination. She argues that the documents upon which the trial court relied were
technically defective and that the hearing on the petition for termination was procedurally defective.
Those allegations have been addressed above. She also contends that the affidavit of relinquishment
is invalid because her execution of the affidavit was not voluntary and was perpetrated by fraud on
the part of Adoption Affiliates employees.

 An irrevocable affidavit of relinquishment and a petition for termination can alone support
a judgment of termination. Neal v. Texas Dept. of Human Services, 814 S.W.2d 216, 224 (Tex.
App.--San Antonio 1991, writ denied). It was the intent of the Legislature to make an irrevocable
affidavit of relinquishment sufficient evidence on which the trial court can make a finding that
termination is in the best interest of the child. See Brown v. McLennan County Children's Protective
Services, 627 S.W.2d 390, 394 (Tex. 1982). Accordingly, once a parent has surrendered custody of
a child via an irrevocable affidavit of relinquishment, the affidavit may be set aside only upon proof,
by a preponderance of the evidence, that the affidavit was executed as a result of coercion, duress,
fraud, deception, undue influence or overreaching. Coleman v. Smallwood, 800 S.W.2d 353, 356
(Tex. App.--El Paso 1990, no writ).

 In this case, Bruno makes allegations of overreaching on the part of Adoption Affiliates
employees, but she offers no evidence to substantiate her allegation. At the hearing on her motion
for new trial, Bruno testified extensively about her emotional state at the time she signed the
affidavit. She repeatedly stated that she decided to place her baby for adoption because she did not
want her parents to discover that she had become pregnant and had a child, she was afraid of her
parents' reaction, and she did not want to disappoint them. None of this constitutes evidence that
she was coerced into signing the affidavit by anyone at Adoption Affiliates. In fact, the "pressure"
she alleges forced her into signing the affidavit was caused by her own "fear." Bruno testified that
the affidavit was not signed knowingly and voluntarily because she "didn't know what else to do"
and she was "afraid." This testimony provides no evidence of coercion, duress, fraud, deception,
undue influence or overreaching on the part of Adoption Affiliates. To the contrary, the evidence
reflects that Bruno was given ample time and information to consider her decision, she made her
decision resolutely, and she signed the affidavit voluntarily.

 It is clear that after she signed the affidavit, Bruno changed her mind. However, such
evidence is not enough to render the affidavit invalid. See Brown, 627 S.W.2d at 393 (stating that
children voluntarily relinquished pursuant to that family code cannot be snapped back at the whim
of the parent). The evidence in this case is sufficient to support the decree of termination.

 The judgment of the trial court terminating Bruno's parental rights is affirmed.


 KAREN ANGELINI

 JUSTICE

PUBLISH


Return to 4th Court of Appeals