TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00098-CV






Yevette Heiser and Joe Heiser, Appellants



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT

NO. 01-558-C395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING






 This appeal stems from the denial of a petition for bill of review and for injunctive
relief following the voluntary termination of parental rights. In four issues, appellants Yevette
Heiser and Joe Heiser assert that (1) they did not voluntarily relinquish their parental rights because
they misunderstood the legal effect of signing irrevocable affidavits of voluntary relinquishment of
parental rights, and (2) the district court incorrectly found that appellants failed to present prima
facie proof of a meritorious defense or evidence of fraud, accident, or wrongful act by the Texas
Department of Protective and Regulatory Services, and that they were at fault in the termination
proceedings. Concluding that the evidence in the record supports the district court's findings, we
affirm the judgment of the district court as modified.

PROCEDURAL BACKGROUND

 In May 2001, the Heisers were convicted of criminally negligent bodily injury to one
of their two children and sentenced to two years in a state jail. In a related civil case, the Department
sought termination of the Heisers' parental rights to both children. On June 6, 2001, shortly before
the trial of the civil case, both parents signed irrevocable (1) affidavits of voluntary relinquishment of
parental rights, and a hearing was held on the same day. At the termination hearing, the Heisers
urged that their children be placed with family members but acknowledged that they understood
there was no guarantee of that placement. The district court found by clear and convincing evidence
that termination of parental rights was in the best interest of the children, entered agreed orders of
termination, appointed the Department as permanent managing conservator of the children, (2) and
dismissed the attorneys whom the Heisers had retained to represent them in the termination
proceedings. 

 Within days of the termination hearing, the Department planned a trip for the children
to visit family members who lived out of state, as part of its investigation to place the children with
family. Soon afterward, the Department received information that Mrs. Heiser intended to
reestablish contact with her children through the family members. The trial judge canceled the
children's travel plans based on a recommendation by the Department that, because of this potential
for reestablishing contact, placement with the out-of-town family members would not be in the best
interest of the children. At some point thereafter, the Heisers learned of the trial judge's decision. 

 Mrs. Heiser filed a petition for bill of review and injunctive relief on October 4, 2001,
contending that her relinquishment was not voluntary and seeking to enjoin the Department from
placing the children with anyone but family members; Mr. Heiser joined in the petition on November
6, 2001. After a hearing on November 16, 2001, the district court rendered an order denying the
petition for bill of review and injunctive relief, accompanied by findings of fact and conclusions of
law. The Heisers appeal the district court's denial of their petition for bill of review and injunctive
relief.


ANALYSIS A bill of review is an equitable proceeding to set aside a judgment that is no longer
appealable or subject to a motion for new trial. Baker v. Goldsmith, 582 S.W.2d 404, 406 (Tex.
1979). "On expiration of the time within which the trial court has plenary power, a judgment cannot
be set aside by the trial court except by bill of review for sufficient cause . . . ." Tex. R. Civ. P.
329b(f). Courts narrowly construe the "sufficient cause" upon which a judgment may be set aside
on bill of review because of the fundamental policy that judgments must become final at some point.
See Transworld Fin. Servs. Corp. v. Briscoe, 722 S.W.2d 407, 407 (Tex. 1987).

 The complainant must set forth three elements in a sworn petition for bill of review:
(1) a meritorious defense to the cause of action alleged to support the judgment, or a meritorious
claim, (2) which the party was prevented from making by either the fraud, accident, or wrongful act
of the opposing party or official mistake, and (3) which is unmixed with the party's own fault or
negligence. See Baker, 582 S.W.2d at 408; Hanks v. Rosser, 378 S.W.2d 31, 34-35 (Tex. 1964). 
As a pretrial matter, the complainant must further present prima facie proof of a meritorious defense,
showing that the defense is not barred as a matter of law, which would entitle the complainant to
judgment on retrial if no evidence to the contrary is offered. Baker, 582 S.W.2d at 408-09. This
prima facie proof may be through documents, answers to interrogatories, admissions, affidavits on
file, and any other evidence that the trial court receives in its discretion. Id. at 409. If the trial court
determines that the complainant did not make a prima facie showing of a meritorious defense, the
court shall dismiss the case. Id.

 The district court's order denying the Heisers' petition for bill of review was
accompanied by extensive findings of fact and conclusions of law. Because we have a complete
reporter's record, we are not bound by the trial court's findings of fact. Tucker v. Tucker, 908
S.W.2d 530, 532 (Tex. App.--San Antonio 1995, writ denied). Instead, we review the findings of
fact for legal and factual sufficiency of the evidence to support them, under the same standard as
reviewing jury findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). In considering legal
sufficiency, we consider all of the evidence in the light most favorable to the prevailing party,
indulging every inference in that party's favor. Associated Indem. Corp. v. CAT Contracting, Inc.,
964 S.W.2d 276, 285-86 (Tex. 1998). In reviewing factual sufficiency, we consider all of the
evidence and uphold the finding unless the evidence is too weak to support it or the finding is so
against the overwhelming weight of the evidence as to be manifestly unjust. Westech Eng'g, Inc.
v. Clearwater Constructors, Inc., 835 S.W.2d 190, 195 (Tex. App.--Austin 1992, no writ).
However, we review a court's conclusions of law de novo. Black v. City of Killeen, 78 S.W.3d 686,
691 (Tex. App.--Austin 2002, pet. denied).

 The Heisers allege as a preliminary issue that the district court's dismissal of their
attorneys at the end of the termination hearing constituted an official mistake, depriving them of the
ability to bring a timely appeal within thirty days of the termination order. (3) We will address this
preliminary issue first.

 Citing Baker and Peralta v. Heights Medical Center, Inc., the Heisers assert that the
dismissal of their attorneys violated their due process rights and relieves them of having to present
prima facie proof of a meritorious defense. See Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80
(1988); Baker, 582 S.W.2d at 404. Both Peralta and Baker are distinguishable. In Peralta, the
appellant never had an opportunity to raise a meritorious defense because of improper service of
process, violating appellant's due process rights. Peralta, 485 U.S. at 86-87. In Baker, a file clerk
misplaced defendant's answer, leading to an improper default judgment. The court concluded that
this act constituted an official mistake. Baker, 582 S.W.2d at 407.

 Here, the district court neither violated the Heisers' due process rights nor made an
official mistake. In cases involving irrevocable affidavits of relinquishment, a court may terminate
parental rights only upon finding by clear and convincing evidence that the parent "executed before
or after the suit [affecting the parent-child relationship] is filed an unrevoked or irrevocable affidavit
of relinquishment of parental rights," and that termination is in the best interest of the child. Tex.
Fam. Code Ann. § 161.001(1)(K) & (2) (West Supp. 2002). After applying this standard, the district
court signed an agreed order of termination, then dismissed the Heisers' attorneys. Neither the
Heisers nor their attorneys objected to the dismissal at the termination hearing. After entry of the
final agreed termination order, the attorneys' representation of the Heisers in the termination
proceedings logically ended. Thus, the district court's dismissal of the attorneys was within its
discretion; it was not an official mistake. "Considering the counter-balancing goals of finality of
judgments and the elimination of endless litigation, . . . abuse of discretion is not a proper subject
for a bill of review." Arndt v. Arndt, 714 S.W.2d 86, 88 (Tex. App.--Houston [14th Dist.] 1986,
no writ). We therefore overrule this preliminary issue.

 The Heisers allege in their first issue that their affidavits were not voluntary because
they did not understand the legal effect of the affidavits. They contend that the Department misled
them into believing that the legal effect of signing the affidavits would be to place the children with
family members. Because "[t]he natural right which exists between parents and their children is one
of constitutional dimensions," Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976), an affidavit of
relinquishment must be made "voluntarily, knowingly, intelligently, and with full awareness of the
legal consequences." Vela v. Marywood, 17 S.W.3d 750, 759 (Tex. App.--Austin 2000, pet.
denied).

 The proponent of the affidavit has the burden to establish by clear and convincing
evidence that the affidavit was executed according to the family code requirements. Tex. Fam. Code
Ann. § 161.103; see also Vela, 17 S.W.3d at 758. After the proponent has met that burden, the
burden shifts to the affiant to establish by a preponderance of the evidence that the affidavit was
executed because of "coercion, duress, fraud, deception, undue influence, or overreaching." In re
Bruno, 974 S.W.2d 401, 405 (Tex. App.--San Antonio 1998, no pet.) (citing Coleman v.
Smallwood, 800 S.W.2d 353, 356 (Tex. App.--El Paso 1990, no writ)). Unenforceable promises
and undue influence can render an affidavit of relinquishment involuntary. See Queen v. Goeddertz,
48 S.W.3d 928, 932 (Tex. App.--Beaumont 2001, no pet.) (affidavit involuntary because of
unenforceable written promises of continued visitation); Vela, 17 S.W.3d at 762-63 (affidavit
involuntary because of adoption agency's unenforceable and deceptive oral promises of visitation);
Neal v. Texas Dep't of Human Servs., 814 S.W.2d 216, 221-22 (Tex. App.--San Antonio 1991, writ
denied) (affidavit involuntary because of husband's coercion of wife to sign). An involuntarily
executed affidavit is a complete defense to a termination decree. Vela, 17 S.W.3d at 759.

 After concluding that the Department carried its burden, the district court found that
the Heisers failed to prove that "the affidavits of relinquishments would not have been made absent
any . . . representations" about placement of the children or to produce any evidence of "mistake or
reliance on mistaken information." At the termination hearing, Mrs. Heiser testified in an
examination by her attorney:


[DEFENSE ATTORNEY]: And you have signed an affidavit of relinquishment of
your parental rights this morning; is that correct?


MRS. HEISER: Yes, sir.


[DEFENSE ATTORNEY]: You've done that after meeting with your counsel and
discussing all of your options?


MRS. HEISER: (Moving head up and down)

[DEFENSE ATTORNEY]: You need to make an answer that the court reporter--


MRS. HEISER: Yes, sir.


 . . . .


[DEFENSE ATTORNEY]: And it's your understanding based on those
discussions that the Department and the guardians ad
litem are going to be, in good faith, pursuing a
placement of the children with your brother and his
family; is that your understanding?


MRS. HEISER: It is, and that's what led me to sign this.


[DEFENSE ATTORNEY]: But you understand that there's no guarantee that that
is going to happen, that they are just going to make an
effort to see there is a possible resolution for the
children; you understand that, correct?


MRS. HEISER: I understand there's no guarantee, period.



Mrs. Heiser later testified that she understood the effect of having the Department appointed as
permanent managing conservator of the children.

 Mr. Heiser gave similar testimony when examined by his attorney:


[DEFENSE ATTORNEY]: Mr. Heiser, you have heard [Mrs. Heiser's attorney]
explain to your wife the circumstances we're under
here regarding you coming in and voluntarily
relinquishing your parental rights to both of your
children; you've heard all of that?


MR. HEISER: Yes.


[DEFENSE ATTORNEY]: And I have, also, discussed this with you, correct?


MR. HEISER: Yes.


[DEFENSE ATTORNEY]: Do you understand what [Mrs. Heiser's attorney] went
through with Yvette [sic] that this is a plan that is
going to be pursued but there is no guarantee that the
children will, ultimately, end up with your brother-in-law and his wife?


MR. HEISER: That's correct.



The trial judge and the attorney ad litem for one of the children also advised the Heisers on the
record at the hearing that there was no guarantee of placement. Although Mrs. Heiser testified later
that she had been distraught when signing the affidavit, the record contains no other proof of her
emotional state. In any event, any emotional upset that she may have felt in executing the affidavit
did not render it involuntary. See Lumbis v. Texas Dep't of Prot. & Regulatory Servs., 65 S.W.3d
844, 851 (Tex. App.--Austin 2002, pet. denied). Examining the record for evidence that the Heisers
signed the affidavits in reliance on mistaken or misleading information provided by the Department,
we find none. The record supports the district court's findings that the Heisers signed the affidavits
voluntarily and with knowledge of the legal effect of signing, not subject to any unenforceable
promises or undue influence by the Department. We therefore overrule the Heisers' first issue.

 In their second issue, the Heisers assert that the district court incorrectly found that
the Heisers "failed to show any credible evidence, and failed to meet their burden to show that they
have a meritorious defense to the cause of action alleged to support [the] Judgment." The Heisers
had the burden to present prima facie proof of a meritorious defense at the pretrial hearing, showing
that their defense was not barred as a matter of law, and they would be entitled to judgment on retrial
if no evidence to the contrary were offered. Baker, 582 S.W.2d at 408-09. Because the only relevant
inquiry at the pretrial hearing is a question of law--whether the Heisers presented prima facie proof
of a meritorious defense that is not barred as a matter of law--we review the district court's decision
on this issue de novo. See Jones v. Texas Dep't of Prot. & Regulatory Servs., No. 03-01-00279-CV,
slip op. at 8, 2002 Tex. App. LEXIS 6397, at *12 (Tex. App.--Austin Aug. 30, 2002, no pet. h.).

 The Heisers contend that the involuntariness of their affidavits is prima facie proof
of a meritorious defense. The district court found that the Heisers "failed to show any credible
evidence" of a meritorious defense. As discussed above, the record does not show that the affidavits
were executed involuntarily or that the Heisers misunderstood the legal effect of the affidavits. 
Additionally, the Heisers did not raise a meritorious defense in their pleadings. We hold that the
district court had adequate grounds to deny the Heisers' petition for bill of review for failure to
present prima facie proof of a meritorious defense, and we overrule the Heisers' second issue. See
Baker, 582 S.W.2d at 409.

 The Heisers allege in their third issue that the district court incorrectly found "no
evidence of any fraud, accident, or wrongful act on the part of" the Department. (4) They assert that
the Department acted fraudulently by breaching representations that it would place the children with
family members. At the termination hearing, the Department agreed to seek the placement of the
children with family in good faith. Through questioning by her own attorney, Mrs. Heiser testified
"I understand there's no guarantee, period" that the Department's commitment to a good-faith effort
would lead to placement of the children with family.

 Mr. Heiser, when questioned by one of the attorneys ad litem, testified as follows:


[ATTORNEY AD LITEM]: But you are signing it because that's what you want to
do in the hopes that down the road the children--that
that placement with the [family] will be pursued in the
hopes that it is the final placement for the children?


MR. HEISER: That is correct.


[ATTORNEY AD LITEM]: You, also, understand that there are many things,
unforeseen things, that could happen that would
prevent that from happening, but that is the--that is
where we are going from today if this relinquishment
happens, the Department is going to pursue that
avenue?


MR. HEISER: That's correct.



The trial judge stated, "It is my understanding that pursuit [of placement] is going to start quickly
after this hearing is over, but there is no guarantee. If it doesn't work out, it doesn't work out." He
added, "Nobody's going to be placed anywhere and nobody's going to be adopted--
nobody's--nothing's going to happen unless I give that approval." The district court concluded in
its findings of fact that the Heisers "were repeatedly questioned and stated that they in fact
understood that this was not guaranteed and reasonable cause could still prevent such placement" 
and that they "specifically understood that the ultimate decision regarding placement belonged to the
Court, regardless of any recommendation of the Department."

 The Heisers did not adduce any proof that the Department did not act in good faith
or induced the Heisers into signing the affidavits. The record supports the district court's finding
that the Heisers presented no evidence of any fraud, accident, or wrongful act by the Department. 
We overrule the Heisers' third issue. (5)


CONCLUSION

 The record contains legally and factually sufficient evidence to support the district
court's findings that the Heisers voluntarily signed their irrevocable affidavits of relinquishment of
parental rights and understood the legal effect of those affidavits. Applying the same standard of
review, we hold that the record further supports the district court's findings that the Heisers failed
to present prima facie proof of a meritorious defense or proof of any wrongful act by the Department. 
Accordingly, we overrule the Heisers' first three issues. Because dismissal is the correct disposition
for failure to present prima facie proof of a meritorious defense, see Baker, 582 S.W.2d at 409, we
modify the judgment to reflect a dismissal and affirm the judgment of the district court as modified.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Modified and, as Modified, Affirmed

Filed: October 3, 2002

Do Not Publish
1. The relinquishment of parental rights in an affidavit that designates the Texas Department
of Protective and Regulatory Services to serve as the managing conservator is irrevocable. Tex.
Fam. Code Ann. § 161.103(e) (West Supp. 2002).
2. The McBrides, Mrs. Heiser's parents, also sought managing conservatorship of the
children. In an amicus capacity in this appeal, Mr. McBride urged that the district court deprived
the McBrides of their due process rights by ignoring their petition in intervention for managing
conservatorship. Although the McBrides filed a separate appeal, it was dismissed at their request.
3. The Heisers also assert that dismissal of their attorneys prevented them from being able
to "monitor the transfer of the children to their family." They attested in their affidavits, however,
that "I FULLY UNDERSTAND THAT I MAY NOT BE INFORMED ABOUT THE
TERMINATION SUIT OR ABOUT ANY OTHER HEARINGS OR PROCEEDINGS AFFECTING
THE CHILDREN NAMED IN THIS AFFIDAVIT."
4. At oral argument, however, they argued that they did not have to show fraud because they
did not sign their affidavits knowingly and voluntarily.
5. In light of our disposition of the Heisers' first three issues, we need not address their fourth
issue.