COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-028-CV

 

 

IN THE INTEREST OF                                                                            

 

 

W.M. AND A.L.M., CHILDREN                                                                

 

 

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

Appellant Ronald M., the
biological father of W.M. and A.L.M., contests the trial court=s order terminating his parental rights.  In four points, appellant argues that the
evidence was legally and factually insufficient to establish that he
voluntarily relinquished his parental rights and that termination was in the
best interests of the children.  We
affirm.








II. Factual and Procedural
Background  

On September 6, 2005, the
Department of Family and Protective Services (ADFPS@) received a
referral alleging neglectful supervision of W.M., a two-year-old, and A.L.M., a
one-year-old, by their parents, Erin C. and appellant.  During its investigation, DFPS discovered
that both parents tested positive for methamphetamine.  Upon DFPS=s request, Erin and appellant attended several DFPS-sponsored service
groups, including Drug and Alcohol Assessment, Breakthrough Christian
Counseling, and Alcoholic=s Anonymous
meetings.  At some point in late 2005,
appellant began refusing to attend substance abuse programs. 

In January 2006, appellant
began working in an oil field, but he lost the job that same month.  Erin, appellant, and the two boys were
evicted from their home in March 2006 for failing to pay rent.  That same month, Erin again tested positive
for methamphetamine and admitted to using drugs at the drilling site where
appellant had worked.  When Erin received
her drug test results, she stated that the boys had been asleep at that time,
and she had not seen appellant use methamphetamine, but was Asure he has.@








Also in March 2006, DFPS
completed a safety plan that placed the boys with the maternal grandparents,
Teena and David C.  Later that month,
appellant was arrested and incarcerated for unauthorized use of a motor
vehicle.  On April 14, 2006, after
appellant was released from jail, DFPS met with Erin and him.  During the meeting, appellant admitted that
he had used methamphetamine Aabout three weeks@ earlier.  After that meeting,
DFPS was unable to reach appellant, as he never provided an address or phone
number and never contacted DFPS on his own. 


On May 22, 2006, DFPS filed a
Petition for Protection of Children, for Conservatorship, and for Termination
in Suit Affecting the Parent-Child Relationship because appellant and Erin used
methamphetamine drugs, failed to maintain a residence, and failed to complete
most of the DFPS-sponsored programs.  In
a hearing on June 5, 2006, the trial court ordered appellant and Erin to attend
counseling, to attend parenting classes, to complete drug and alcohol
assessments, and to participate in drug treatment programs.  Appellant failed to complete any of the ordered
services, failed to appear for a status hearing in July 2006, and failed to
appear for a permanency hearing in September 2006.








Teena and David C., the
maternal grandparents, expressed an interest in adopting the boys, and on
October 31, 2006, appellant and Erin signed affidavits of voluntary
relinquishment of parental rights.  The
affidavits were also signed by two witnesses and verified by a notary
public.  Appellant was appointed trial
counsel on December 7, 2006, and a final hearing was held on January 8, 2007,
where appellant appeared but did not testify. 
That same day, appellant and Erin signed the termination order as to both
form and substance. 

Later that month, appellant
filed a motion for new trial.  At the
hearing on this motion, appellant testified that he signed the relinquishment
affidavit only because of fraudulent representations by DFPS.  Appellant also alleged that he was never
offered an attorney until the final hearing. 
The trial court denied the motion; this appeal followed.

III.  Voluntariness of the Affidavit of
Relinquishment

In his first two points,
appellant argues that the trial court erred by terminating his parental rights
based on his affidavit of relinquishment because the evidence is legally and
factually insufficient to show that he executed the affidavit voluntarily and
knowingly.  Appellant contends that his affidavit
was executed as a result of fraud, deception, and overreaching.

A.  Applicable Law








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d
534, 547 (Tex. 2003).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  TEX. FAM. CODE ANN. ' 161.206(b) (Vernon Supp. 2006); Holick v. Smith, 685 S.W.2d
18, 20 (Tex. 1985).  We strictly
scrutinize termination proceedings and strictly construe involuntary
termination statutes in favor of the parent. 
Holick, 685 S.W.2d at 20-21; In re E.S.S., 131 S.W.3d 632,
636 (Tex. App.CFort Worth
2004, no pet.).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  TEX. FAM. CODE ANN. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re K.W., 138 S.W.3d 420, 425 (Tex. App.CFort Worth 2004, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@ TEX. Fam. Code Ann. ' 101.007
(Vernon 2002). 








The higher burden of proof in
termination cases elevates the appellate standard of legal sufficiency
review.   J.F.C., 96 S.W.3d at 266.  In reviewing the evidence for legal
sufficiency in parental termination cases, we must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  Id. at 265-66.  We must review all evidence in the light most
favorable to the finding and judgment.  Id.
at 266.  This higher burden of proof
also elevates the appellate standard of factual sufficiency review.  In re C.H., 89 S.W.3d 17, 25 (Tex.
2002).  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  Id. at 25.  In considering whether the evidence of
termination rises to the level of being clear and convincing, we must determine
whether the evidence is such that a factfinder could reasonably form a firm
belief or conviction that the grounds for termination were proven.  Id.  Our inquiry here is whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief that the
termination of the parent=s parental
rights would be in the best interest of the child.  Id. at 28.    








Under the Texas Family Code,
the trial court may terminate parental rights upon finding, by clear and
convincing evidence, that the parent has Aexecuted before or after the suit is filed an unrevoked or irrevocable
affidavit of relinquishment of parental rights as provided by this chapter@ and that termination is in the best interest of the child.  Tex.
Fam. Code Ann. '
161.001(1)(K), (2); In re C.R.P., 192 S.W.3d 823, 825 (Tex. App.CFort Worth 2006, no pet.); In re D.R.L.M., 84 S.W.3d 281, 296‑98
(Tex. App.CFort Worth
2002, pet. denied); In re V.R.W., 41 S.W.3d 183, 190 (Tex. App.CHouston [14th Dist.] 2001, no pet.), disapproved on other grounds
by J.F.C., 96 S.W.3d at 256. 
Implicit in the family code is the requirement that the affidavit of
voluntary relinquishment be voluntarily executed.  V.R.W., 41 S.W.3d at 192; Neal v.
Tex. Dep=t of Human
Servs., 814 S.W.2d 216, 218‑19 (Tex.
App.CSan Antonio 1991, writ denied). 
Evidence that an affidavit of voluntary relinquishment was signed,
notarized, witnessed, and executed in compliance with family code section
161.103 is prima facie evidence of its validity.  Tex.
Fam. Code Ann. ' 161.103; V.R.W.,
41 S.W.3d at 190.

Once it has been shown by
clear and convincing evidence that the affidavit of relinquishment was executed
according to the requirements of section 161.103, courts have traditionally
held that the affidavit may be set aside only upon proof, by a preponderance of
the evidence, that the affidavit was executed as a result of Acoercion, duress, fraud, deception, undue influence, or overreaching.@  In re Bruno, 974 S.W.2d
401, 405 (Tex. App.CSan Antonio
1998, no pet.); see D.R.L.M., 84 S.W.3d at 296.  The burden of proving such wrongdoing is on
the party opposing the affidavit.  See
D.R.L.M., 84 S.W.3d at 296‑98.

 








B.  Analysis

Appellant asserts that Mary
Leigh-Ann Riley, the family=s case worker, failed in her Aduty@ to warn him
that by signing the affidavit, he would have no legal right to visit his sons
or enforce the college and health care benefits that he believed to be
guaranteed with the boys= adoption by
the maternal grandparents.  Such inaction
on Riley=s part, argues appellant, constituted fraud, deception, and
overreaching.  We disagree.  

At the termination hearing,
Riley testified that appellant Ahad already decided on [his] own that [he] wanted to relinquish@ his parental rights before she ever spoke with him about possible
relinquishment.  Further, when appellant
and Erin came to her office to discuss the relinquishment, Riley described the
relinquishment and adoption processes. 
Teena and David C., the boys= maternal grandparents, wanted to adopt the boys; in the process of
explaining this adoption, Riley told appellant that there was a possibility
that Teena and David C. would provide the boys with health care and college
benefits, but there was no guarantee. 
Riley also asked appellant if he wanted an attorney before he signed the
relinquishment affidavit; appellant declined this opportunity.[2]








On October 31, 2006, while
two witnesses were present, appellant signed the affidavit of relinquishment
and had it notarized.  In the following
months, appellant never attempted to revoke the affidavit.  Appellant=s trial counsel was appointed on December 7, 2006, and the final
hearing on the termination was held on January 8, 2007.  Appellant did not testify at the final
hearing or provide any other evidence or argument that he involuntarily signed
the affidavit because of fraud, deception, or overreaching.  Instead, appellant signed the order
terminating his parental rights under the notation, AAPPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE,@ even though his attorney had told him not to sign anything.








At the hearing on his motion
for new trial, appellant testified that he only signed the termination order
because he thought it was a document stating that he was present for the final
hearing.  Appellant also stated that he
did not take the stand in the final hearing because he was in tears and could
not talk when he was called.  However, in
evaluating the sufficiency of the evidence presented at trial, we do not
consider new facts and testimony presented in the motion for new trial.  See Barker v. Eckman, 213 S.W.3d 306,
313 (Tex. 2006) (providing that a court conducting a factual sufficiency review
of the evidence may only review the evidence according to the jury charge given
and the jury findings in response to that charge); Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001) (reviewing evidence admitted at trial
when conducting a sufficiency review).   


Appellant relies on Jones
v. Texas Department of Protective and Regulatory Services to support his
argument that Riley and the DFPS violated its duty to warn him about the rights
he would give up by signing the affidavit of relinquishment.  85 S.W.3d 483, 493 (Tex. App.CAustin 2002, pet. denied). 
However, Jones is distinguishable from this case in several
ways.  Id.  First, Jones involved a bill of
review, and the appellate court there disregarded all evidence contrary to
Jones=s claim that the affidavit was wrongfully procured.  Id.  Thus, as long as there was a scintilla of
evidence to support Jones=s claims, a
determination had to be made in her favor. 
Id.








Further, in Jones, the
mother had been in DFPS=s care from
the age of fourteen, when she became pregnant. 
See id. at 486.  She
attended special education classes in school and had been treated for
depression.  Id. at 492.  Jones signed the affidavit of relinquishment
when she was eighteen.  Id.  On the day Jones signed the relinquishment,
she asked for her attorney but was told by a DFPS employee that the attorney
could not be reached.  Id. at
492.  The DFPS employee also told Jones
that DFPS had spoken with her attorney, and the attorney said to sign the
affidavit.  Id.  Further, a DFPS employee told Jones that if
she signed the reliquishment, her daughter would be placed with her cousin, and
Jones would be allowed to see her Aonce in a while.@  Id. at 492-93.  However, a DFPS employee also told Jones that
if she did not sign the affidavit of relinquishment, DFPS would give the child
to a stranger.  Id. at 493.  After Jones signed the affidavit, she
discovered that her daughter was not going to be adopted by her cousin; Jones
immediately filed a bill of review.  Id.  Thus, the facts in Jones are significantly
different than the facts here.   








We hold that there is clear
and convincing evidence that appellant executed the affidavit of relinquishment
voluntarily, and there is no evidence that appellant=s execution of the affidavit of relinquishment was the result of
coercion, duress, fraud, or any other form of wrongdoing.  TEX. FAM. CODE ANN. ''
161.001(1)(K), (2), 161.206(a);  J.F.C., 96 S.W.3d at 263; D.R.L.M.,
84 S.W.3d at 296‑98; V.R.W., 41 S.W.3d at 190, 192.  While appellant may have been unclear about
how the adoption benefits and visitation worked, the record shows that he
approached DFPS wanting to relinquish his parental rights before even knowing
the possible benefits of adoption. 
Further, DFPS asked him if he wanted an attorney, and he declined the
opportunity.  Appellant did not try to
revoke his relinquishment affidavit in the two months prior to the final
hearing, and even when represented by counsel, appellant signed the order
terminating his parental rights against counsel=s recommendation.  See Lumbis
v. Tex. Dep=t of
Protective & Regulatory Servs., 65 S.W.3d
844, 850‑51 (Tex. App.CAustin 2002, pet. denied) (holding that when mother discussed the
consequences of an affidavit of relinquishment with her attorney, the affidavit
of relinquishment was voluntarily signed even though mother was emotionally
upset and believed that she might be able to have post‑adoption contact
with her children at the time she signed it). 
Applying the appropriate standard of review, we conclude that the
evidence was legally and factually sufficient to establish that appellant
executed the affidavit of relinquishment voluntarily and knowingly.  J.F.C., 96 S.W.3d at 266; C.H.,
89 S.W.3d at 25.  Accordingly, we
overrule appellant=s first two
points.  

IV.  Best Interest of the Children

In his third and forth
points, appellant argues that the trial court erred by terminating his parental
rights because the evidence is legally and factually insufficient to establish
that termination is in the best interest of the children.  We disagree. 


 

 








A.  Applicable Law

Nonexclusive factors that the
trier of fact in a termination case may use in determining the best interest of
the child include 

(1)    the desires of the child,

 

(2)    the emotional and physical needs of the
child now and in the       future, 

 

(3)    the emotional and physical danger to the
child now and in the     future, 

 

(4)    the parental abilities of the individuals seeking custody, 

 

(5)    the programs available to assist these
individuals to promote       the best
interest of the child,

 

(6)    the plans for the child by these individuals
or by the agency        seeking custody, 

 

(7)    the stability of the home or proposed placement, 

 

(8)    the acts or omissions of the parent which
may indicate that        the existing
parent‑child relationship is not a proper one, and 

 

(9)    any excuse for the acts or
omissions of the parent. 








Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976); In re M.N.G., 147
S.W.3d 521, 539 (Tex. App._Fort Worth 2004, pet. denied). 
These factors are not exhaustive. 
Some listed factors may be inapplicable to some cases; other factors not
on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27; M.N.G.,
147 S.W.3d at 539.  Furthermore,
undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the
child.  C.H., 89 S.W.3d at 27; M.N.G.,
147 S.W.3d at 539.  On the other hand,
the presence of scant evidence relevant to each Holley factor will not
support such a finding.  C.H., 89
S.W.3d at 27; M.N.G., 147 S.W.3d at 539.

In addition to the above, a
parent=s inability to provide adequate care for the child, lack of parenting
skills, poor judgment, and repeated instances of immoral conduct may also be
considered when looking at the child=s best interest.  In re
C.A.J., 122 S.W.3d 888, 893 (Tex. App.CFort Worth 2003, no pet.). 
Again, we apply the elevated standard of review to determine whether the
evidence at trial met the clear and convincing burden of proof at trial.  J.F.C., 96 S.W.3d at 266; C.H., 89
S.W.3d at 25; see In re E.M.N., 221 S.W.3d 815, 827-28 (Tex. App.CFort Worth
2007, no pet.).  








There are several reasons why
the trial court=s best
interest finding was supported by clear and convincing evidence.  First, appellant voluntarily signed the
affidavit relinquishing his parental rights, which provided, ATermination of the parent-child relationship is in the best interest
of the children.@  Further, appellant signed the trial court=s order terminating his parental rights, thereby approving and
consenting to the order Aas to both
form and substance.@  In paragraph 7.1 of the order, the trial
court found Aby clear and
convincing evidence that termination of the parent-child relationship . . . is
in the children=s best
interest.@

The record supports this
conclusion.  While the boys were living
with him in the fall of 2005, appellant tested positive at least once for
methamphetamine, and even after DFPS began its investigation, appellant
continued to use drugs.  Appellant failed
to complete most of the DFPS-sponsored services, including the substance abuse
programs, and failed to keep a steady job or home.  In March 2006, after DFPS placed the boys
with their maternal grandparents, appellant was arrested and incarcerated for
unauthorized use of a motor vehicle.  The
next month, DFPS met with appellant, and he admitted to recent use of
methamphetamine.  After that meeting,
DFPS was unable to reach appellant, as he never provided an address or phone
number and never contacted DFPS on his own. 

In a hearing on June 5, 2006
regarding the status of appellant and his relationship with the boys, the trial
court ordered appellant to attend counseling, to attend parenting classes, to
complete drug and alcohol assessments, and to participate in drug treatment
programs.  Appellant failed to complete
any of the ordered services and failed to appear for a status hearing on July
31, 2006.  Appellant also failed to
appear for a permanency hearing on September 19, 2006.








DFPS reported that the
maternal grandparents, the hopeful adoptive parents, have provided the boys
with a safe and stable environment and are able to meet their needs.  Further, A[t]he boys have been living with their grandparents off and on since
birth,@ so their adjustment with them has been minimal.  Importantly, the Aboys seem to be thriving in their grandparents[=] care.@

Based upon our review of the
entire record, we conclude that the trial court could have reasonably formed a
firm conviction or belief that termination of appellant=s rights was in the boys= best interests.  C.H.,
89 S.W.3d at 27; M.N.G., 147 S.W.3d at 539.  Accordingly, we hold that the evidence is
legally and factually sufficient to support the best interest findings, and we
overrule appellant=s third and
forth points.

V.  Conclusion

Having overruled appellant=s four points, we affirm the trial court=s order terminating appellant=s parental rights to W.M. and A.L.M.                  

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED:
June 28, 2007                   











[1]See Tex. R. App. P. 47.4.





[2]Even
though appellant states in his brief that the alleged Adeception
and overreaching might have been negated had the Court . . . appointed an
attorney to represent [him] before he signed the affidavit of relinquishment,
rather than five weeks later,@ appellant did not raise an
issue complaining of his lack of counsel at the final hearing, at the motion
for new trial, or on appeal.