41 S.W.3d 183 (2001)
In the Interest of V.R.W.
No. 14-00-00687-CV.
Court of Appeals of Texas, Houston (14th Dist.).
February 22, 2001.
*187 Helen Stewart Truscott, Dickinson, for appellants.
Patrick Reilly, Galveston, Christine L. Mangle, Kemah, (Ad Litem) Janis L. Yarbrough, Galveston (Ad Litem), for appellees.
Panel consists of Justices YATES, WITTIG, and FROST.

OPINION
FROST, Justice.
Appellant, A.W., appeals the trial court's termination of her parental rights to her daughter, V.R.W. Appellees, G.L. and E.L., sought the termination so that they could adopt V.R.W. The trial court based its termination of A.W.'s parental rights on a mother's affidavit of the relinquishment of parental rights. In eight points of error, A.W. complains (1) the trial court erred in denying her a jury trial, (2) the affidavit of relinquishment is void, and (3) the affidavit of relinquishment was obtained as a result of fraud. We conclude that the trial court abused its discretion in denying A.W. a jury trial and, therefore, *188 reverse the judgment of the trial court and remand the case for further proceedings.

I. Factual Background
A.W. gave birth to a baby girl on October 17, 1999. Shortly thereafter, she gave her infant daughter to G.L. and E.L. and signed an affidavit of relinquishment of her parental rights. The facts concerning G.L. and E.L.'s taking possession of A.W.'s daughter and A.W.'s signing the affidavit of relinquishment are disputed.
At trial, Jackie Smith testified that A.W. called her and told her that she was pregnant, but she would not be able afford to keep the baby because she had two other children. A.W. asked Smith if she would be interested in taking the baby. Smith informed A.W. that she could not take the child, but she would try to think of someone who would. Smith claims A.W. stated, at the hospital after her daughter was born, that she was sure that she wanted to "give her up." Contradicting Smith's testimony, A.W. testified that she neither called Smith nor asked her if she would take her baby. A.W., instead, claims she did not know Smith until Smith came to the hospital with Sandra Thomas Crookshire, the aunt of A.W.'s other two children.[1] A.W. claims Smith advised her that she should give her newborn to someone who did not have children because A.W. already had two children.
G.L. testified that she heard about A.W.'s newborn infant from Smith on October 18, 1999. G.L. claims that during a visit with A.W. at the hospital, A.W. stated that her intention was to give her daughter up for adoption. G.L. stated that when she asked A.W. if she was sure that she wanted to give up her child, A.W. replied that she was. G.L. further testified that A.W. had said G.L. could name the child and take her home from the hospital. A.W., on the other hand, testified that when G.L. visited her at the hospital, they discussed temporary care for the child, not adoption.
On October 19, 1999, Galveston County Children's Protective Services ("CPS") received a report that A.W. had tested positive for cocaine. CPS investigated the complaint and prepared a safety plan to be implemented when A.W. and her newborn daughter left the hospital. In accordance with the safety plan, CPS made arrangements for A.W. to stay at a drug treatment center in Beaumont, Texas. Although the safety plan provided for the child to be under the primary care of A.W.'s mother, A.W. would be allowed to take her child with her to the treatment center. CPS was not aware of any arrangement between A.W. and G.L.
On October 21, 1999, one of A.W.'s sisters called G.L. and informed her that the child had gone home from the hospital with A.W. G.L. testified that she let the adoption matter drop. On October 29, 1999, A.W. was to go to the drug treatment center in Beaumont, but, instead, she changed her mind and remained in Galveston. A.W. contacted G.L. and told her she could pick up the child. A.W. testified that her understanding of the arrangement with G.L. was that G.L. would take care of the baby temporarily until A.W. could "pretty much get [herself] together." G.L., on the other hand, testified that she understood that she and her husband were to adopt the baby.[2]
*189 On November 5, 1999, A.W. went with G.L. and E.L. to the office of G.L. and E.L.'s attorney, Robert Hoskins, where A.W. signed a mother's affidavit to relinquish parental rights. A.W. testified that G.L., E.L., and Hoskins told her that it was necessary for A.W. to sign some documents so that G.L. and E.L. could obtain medical care for the baby. A.W. stated that she did not read the documents she was asked to sign because she relied on Hoskins to explain them to her.
Subsequently, CPS learned that A.W. had not gone to the drug treatment center and advised A.W.'s mother that it would take custody of the baby because A.W. had not followed the terms of the safety plan. A.W.'s mother then informed CPS the child was with G.L. and E.L. On November 21, 1999, A.W. went to G.L. and E.L.'s house to retrieve A.W.'s child. G.L. and E.L., however, would not return the child. A few days later, G.L., E.L., A.W., and A.W.'s mother and sisters met at the CPS office. CPS arranged the meeting to ascertain the arrangements for care of the child. At the meeting, A.W. stated that she had signed documents so that her daughter could receive medical care and she was not aware that she had signed a document that terminated her parental rights to her daughter. Although A.W. and her family wanted custody of the child, CPS decided that the child should remain with G.L. and E.L.

II. Procedural Background
On November 5, 1999, G.L. and E.L. filed a petition to terminate the parent-child relationship and to adopt A.W.'s daughter on the basis of the affidavit of relinquishment. On December 1, 1999, A.W. filed a revocation of affidavit as well as a response to the termination suit, claiming the affidavit of relinquishment had been procured by misrepresentations. On December 14, 1999, A.W. filed a request for a jury trial and paid the jury fee. On December 22 and 23, 1999, the trial court held a two-day hearing on the petition to terminate, but deferred any ruling on A.W.'s request for a jury trial. Ultimately, the court denied this request. On February 1, 2000, the trial court granted G.L. and E.L.'s petition to terminate A.W.'s parental rights and entered a decree of termination.

III. Issues Presented on Appeal
In eight points of error, A.W. claims: (1) the trial court erred in denying her request for a jury trial; (2) the affidavit of relinquishment is void because it was not properly verified by a notary and it contains inconsistent statements; and (3) the evidence is legally and factually insufficient to support the trial court's finding that she signed the affidavit of relinquishment voluntarily and that it was not secured by fraud, i.e., G.L. and E.L.'s and their attorney's alleged misrepresentations that the affidavit was merely for the purpose obtaining medical care for the baby.[3]

A. Validity of Affidavit of Relinquishment
In her second through fourth points of error, A.W. challenges the validity of the affidavit of relinquishment.[4] The *190 natural right between parents and their children is one of constitutional dimensions. Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex.1976). A termination decree is complete, final, and irrevocable, divesting forever that natural right, as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). Therefore, termination proceedings must be strictly scrutinized in favor of the parent. In the Interest of G.M., 596 S.W.2d 846 (Tex. 1980); Cawley v. Allums, 518 S.W.2d 790, 792 (Tex.1975).
Under the Texas Family Code, the trial court may terminate parental rights upon a finding, by clear and convincing evidence, that the parent has "executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by this chapter," and that termination is in the best interest of the child. Tex.Fam. Code Ann. § 161.001(1)(K), (2) (Vernon Supp.2000); Brown v. McLennan County Children's Protective Servs., 627 S.W.2d 390, 392 (Tex.1982).[5] Section 161.103 of the Family Code sets forth the requirements for an affidavit of relinquishment. Tex.Fam.Code Ann. § 161.103 (Vernon Supp.2000). The proponent of the affidavit has the burden to establish by clear and convincing evidence that the affidavit was executed according to the terms of section 161.103 of the Family Code. Vela v. Marywood, 17 S.W.3d 750, 758 (Tex. App.-Austin 2000, pet filed); Coleman v. Smallwood, 800 S.W.2d 353, 356 (Tex. App.-El Paso 1990, no writ). An affidavit of relinquishment in proper form is prima facie evidence of its validity. In re B.B.F., 595 S.W.2d 873, 875 (Tex.Civ.App.-San Antonio 1980, no writ).

1. Standard of Review
We review the trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.1994); Skrepnek v. Shearson Lehman Bros., Inc., 889 S.W.2d 578, 579 (Tex.App.-Houston [14th Dist.] 1994, no writ). The clear and convincing evidence standard is an intermediate burden of proof falling between the preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. In re K.R., 22 S.W.3d 85, 89 (Tex. App.-Houston [14th Dist.] 2000, pet. filed) (en banc). When reviewing the legal sufficiency of the evidence, the appellate court considers only the evidence and inferences tending to support the trial court's finding, and disregards all contrary evidence and inferences. Southwestern Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d 52, 54 (Tex.1998) (per curiam). The clear and convincing burden of proof does not alter the appellate standard of review. In re W.A.B., 979 S.W.2d 804, 806 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); In the Interest of B.S.T., 977 S.W.2d 481, 484 n. 4 (Tex.App.-Houston [14th Dist.] 1998, no pet.).[6] Therefore, a no evidence point *191 will be sustained if there is no more than a scintilla of evidence to support the finding. General Motors Corp. v. Sanchez, 997 S.W.2d 584, 588 (Tex.1999).

2. Verification
In her second and third points of error, A.W. claims there is no evidence establishing that the affidavit of relinquishment was properly verified by a notary as required by section 161.103 of the Family Code. See Tex.Fam.Code Ann. § 161.103(a)(3) (Vernon Supp.2000) (providing the affidavit of relinquishment must be "verified before a person authorized to take oaths"). A.W. contends that while the affidavit on its face appears to have been executed properly, procedures for verification were not followed. A .W. asserts the notary was required to ask her to: (1) raise her right hand, (2) swear to tell the truth, (3) verify her name and provide identification, (4) acknowledge that she had read the document, (5) acknowledge that she had signed it freely and voluntarily for the purposes stated in the document, (6) verify that the document was true and correct, (7) acknowledge the importance of the document, (8) and acknowledge that her signature on the document was final. In support of this assertion, A.W. relies on In the Interest of Bruno, 974 S.W.2d 401 (Tex.App.-San Antonio 1998, no pet.). This case, however, does not support such a proposition. In Bruno, the mother argued the affidavit of relinquishment was not valid because the witnesses did not know her, did not know what the contents of the documents were, and did not know whether she had signed her correct name. In the Interest of Bruno, 974 S.W.2d at 404. Rejecting this argument, the court found the notary asked the mother, in the presence of the two witnesses, to raise here right hand, swear to tell the truth, verify her name, provide identification, acknowledge that she had signed it freely and voluntarily for the purposes stated in the document, verify that the document was true and correct, acknowledge the importance of the document, and acknowledge that her signature was final. Id. Nowhere in the opinion does the court expressly or implicitly hold that these are mandatory requirements for notarizing a document.
Neither the witnesses nor the notary have to be physically present when the affiant signs the affidavit. Id. at 405; In the Interest of D.E.W., 654 S.W.2d 33, 35 (Tex.App.-Fort Worth 1983, writ ref'd n.r.e.). A.W. acknowledges that it is not necessary for the notary to be present when the affidavit is actually signed. However, she claims the affidavit was not notarized while she was at Hoskins' office. Hoskins testified to the contrary:
Q. Okay. So when [A.W.] signed it, only the two of you were in the room?
A. No. When she signed it, two witnessesat that point, after she read and after she initialed, I asked the two witnesses to come in. They came in, and they witnessed her signature and asked her was she signing it freely and voluntarily. And they witnessed her signature.

*192 * * *
A. And then the notary came in, and I asked her was this her signature again. It was notarized after the witnesses had left.
Q. So you're testifying that the notary came in and questioned Ms.
A. No, [the] notary didn't question at all. Asked her was this your signature. This her signature [sic].
Q. Did hedid the notary put her under oath?
A. Uh, I'm sure she did. But, I mean, I don't remember. But I'm sure she put her under oath.
Q. Did the notary ask her anything other than is this your signature?
A. Is this your signature, and, uhand place her under oath, and that was it.
* * *
Q. So had you called the notary in to for the special job of notarizing that document?
A. Correct.
* * *
Q. Did Ms. [A.W.] verify to the notary that that was her signature, and that she had freely and voluntarily executed this document?
A. Yes, she did.
Considering only the inferences and evidence in support of the judgment and disregarding all inferences and evidence to the contrary, we find the evidence to be legally sufficient to establish that the affidavit was properly notarized. A.W.'s second and third points of error are overruled.

3. Conflicting Statements
In her fourth point of error, A.W. claims the affidavit of relinquishment is void because it contains conflicting statements. The affidavit of relinquishment states, on the one hand, that A.W. is not giving up her right to be given notice about any lawsuit by G.L. and E.L. to terminate her parental rights and to adopt the child. On the other hand, the affidavit states that A.W. agrees that a final hearing in any termination and adoption suit may be held without further notice to her. A.W. argues that the affidavit must be "clear and consistent" to support termination. A.W., however, failed to raise this argument in the trial court. Therefore, any such complaint has not been preserved on appeal. See Tex.R.App. 33.1. A.W.'s fourth point of error is overruled.

B. Voluntariness of the Affidavit
In her sixth and eighth points of error, A.W. challenges the legal sufficiency of the evidence to support the trial court's finding that she signed the affidavit of relinquishment voluntarily and that it was not secured by fraud.[7] Implicit in the Family Code is the requirement that the affidavit must be voluntarily executed. Vela, 17 S.W.3d at 759; Neal v. Texas Dep't of Human Servs., 814 S.W.2d 216, 218 (Tex.App.-San Antonio 1991, writ denied). Moreover, because an affidavit of relinquishment waives a constitutional right, it must be made voluntarily, knowingly, intelligently, and with full awareness of its legal consequences. Vela, 17 S.W.3d at 759. The proponent of the affidavit has the burden to establish by clear and convincing evidence that the affidavit was executed *193 according to the terms of section 161.103 of the Family Code. Id. at 758; Coleman, 800 S.W.2d at 356. Once the proponent has met that burden, the burden then shifts to the affiant to establish by a preponderance of the evidence that the affidavit was executed as a result of coercion, duress, fraud, deception, undue influence or overreaching. Vela, 17 S.W.3d at 758; In the Interest of Bruno, 974 S.W.2d at 405; Coleman, 800 S.W.2d at 356; see also Catholic Charities v. Harper, 161 Tex. 21, 337 S.W.2d 111, 115 (1960); Terrell v. Chambers, 630 S.W.2d 800, 802 (Tex.App.-Tyler), writ ref'd n.r.e, 639 S.W.2d 451 (Tex.1982) (per curiam); Pattison v. Spratlan, 535 S.W.2d 48, 49-50 (Tex.Civ.App.-Tyler), aff'd, 539 S.W.2d 60 (Tex.1976). An involuntarily executed affidavit is a complete defense to a termination decree. Vela, 17 S.W.3d at 759; Neal, 814 S.W.2d at 219.
Because it was A.W.'s burden at the termination hearing to establish that she did not voluntarily sign the affidavit of relinquishment, she must demonstrate on appeal that the evidence conclusively established all vital facts in support her claim. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.1989). In reviewing a challenge to the legal sufficiency of the evidence, we examine the record for all evidence that supports the trial court's finding, while ignoring all evidence to the contrary. Id. If there is no evidence to support the trial court's finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. Id.
G.L. testified that A.W. assured her that she wanted to give up her infant daughter for adoption. G.L. stated that she and A.W. specifically discussed G.L. and E.L.'s adoption of the child, not the provision of temporary care or medical care for the child. G.L.'s mother, Verna Jackson, testified that before G.L. picked up the child on October 29, G.L. spoke to A.W. and her mother, both of whom assured her that A.W. would sign the documents allowing G.L. and E.L. to adopt the child. Moreover, G.L. and E.L.'s attorney, Robert Hoskins, testified that A.W. took 15 to 25 minutes to read the affidavit. He stated that he explained to A.W. the consequences of the affidavit of relinquishment, i.e., that it was the termination of her parental rights, and that A.W. understood that by signing the affidavit, she was giving up the child for adoption and forfeiting her rights to the child. After reviewing the evidence in support of the trial court's finding that A.W. had voluntarily signed the affidavit of relinquishment and that it was not secured by fraud, we find the evidence is legally sufficient to support that finding. A.W.'s sixth and eighth points of error are overruled.
In her fifth point of error, A.W. claims the fact that she did not receive a copy of the affidavit of relinquishment at the time she signed it further supports her claim that the evidence is legally insufficient to support the trial court's finding that the affidavit was not secured by fraud, i.e., G.L., E.L., and Hoskins' alleged misrepresentations that the purpose of the affidavit was only for allowing the child to receive medical care.[8] Section 161.103(d) *194 states that "[a] copy of the affidavit shall be provided to the parent at the time the parent signs the affidavit." Tex.Fam.Code Ann. § 161.103(d) (Vernon Supp.2000).[9]
In a no-evidence challenge, however, the reviewing court may only consider evidence in support of the trial court's finding. Evidence that A.W. was not provided with a copy of the affidavit of relinquishment at the time she signed it is evidence contrary to the trial court's finding. As determined above, there is legally sufficient evidence to support the trial court's finding that she signed the affidavit voluntarily and that it was not secured by fraud. A.W.'s fifth point of error is overruled.

C. Demand for Jury Trial
In her first point of error, A.W. contends the trial court erred in denying her a jury trial to determine whether the affidavit of relinquishment was procured by fraud. A.W. maintains that she timely filed a request for a jury trial and paid the jury fee. The trial court's denial of a party's demand for a jury trial is reviewed under the abuse of discretion standard. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex.1996). This standard of review requires that the appellate court examine the entire record. Id. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985).
In civil cases, the right of a jury trial is not automatic, but, rather, arises only where a party has demanded it and paid the applicable jury fee. General Motors Corp. v. Gayle, 924 S.W.2d 222, 226 (Tex.App.-Houston [14th Dist.] 1996, orig. proceeding), leave denied, 940 S.W.2d 598 (Tex.1997) (per curiam); Rent America, Inc. v. Amarillo Nat'l Bank, 785 S.W.2d 190, 193 (Tex.App.-Amarillo 1990, writ denied). Texas Rule of Civil Procedure 216 provides:
a. Request. No jury shall be had in any civil suit unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.
Tex.R.Civ.P. 216 (emphasis added). A request for a jury trial made in advance of the thirty-day deadline is presumed to have been made a reasonable time before trial. Halsell v. Dehoyos, 810 S.W.2d 371 (Tex.1991); Wittie v. Skees, 786 S.W.2d 464, 466 (Tex.App.-Houston [14th Dist.] 1990, writ denied). That presumption may be rebutted by showing that the granting of a jury trial would operate to injure the adverse party, disrupt the court's docket, or impede the ordinary handling of the court's business. Halsell, 810 S.W.2d at 371; Wittie, 786 S.W.2d at 466. "Such evidence must appear in the record." Southern Farm Bureau Cas. Ins. Co. v. Penland, 923 S.W.2d 758, 760 (Tex.App.-Corpus Christi 1996, no writ) (citing Halsell, 810 S.W.2d at 371).
The refusal to grant a timely requested jury trial is harmless error only if the record shows that no material issues of fact exists and an instructed verdict would not have been justified. Halsell, 810 S.W.2d at 372 (citing Olson v. Texas Commerce Bank, 715 S.W.2d 764, 767 *195 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.)); Southern Farm Bureau Cas. Ins. Co., 923 S.W.2d at 760; Whiteford v. Baugher, 818 S.W.2d 423, 425 (Tex.App.-Houston [1st Dist.] 1991, writ denied). In the absence of a timely request, it is within the trial court's discretion to deny a jury trial. Martin v. Black, 909 S.W.2d 192, 197 (Tex.App.-Houston [14th Dist.] 1995, writ denied).
G.L. and E.L. filed their petition to terminate the parent-child relationship and for adoption on November 5, 1999. A.W. filed her response to the termination suit and her revocation of the affidavit on December 1, 1999, and her demand for a jury trial on December 14, 1999. A hearing on the termination of A.W.'s parental rights commenced on December 22, 1999, without a jury. There was no trial setting in this case.
G.L. and E.L. maintain that A.W. did not timely request a jury trial because she filed her request for a jury trial only eight days prior to the commencement of the trial. Texas Rule of Civil Procedure 245 provides that the trial court must give the parties at least forty-five days' notice of a first setting for trial. Tex.R .Civ.P. 245. "When compliance with Rule 216 is made impossible by failure to give the notice required by Rule 245, the jury demand will be deemed timely." Bell Helicopter Textron, Inc. v. Abbott, 863 S.W.2d 139, 141 (Tex.App.-Texarkana 1993, writ denied). G.L. and E.L. concede that appellant could not have filed a jury demand in compliance with Rule 216. A.W. filed her request for a jury trial only two weeks after she had filed her revocation of the affidavit contesting the termination suit. Therefore, A.W.'s request for a jury trial was timely. See Martin, 909 S.W.2d at 197-98 (concluding that request for jury trial was not untimely because the case had not been set for trial and a jury was requested as soon as it was apparent there was a fact issue to be tried).
G.L. and E.L. contend that the timeliness of the request notwithstanding, A.W. failed to preserve error on her request for a jury trial by allowing the trial to proceed without objection. The record shows otherwise. A.W.'s counsel brought the request for a jury trial to the trial court's attention:
MS. TRUSCOTT: ... In fact, we're justwe want to go ahead and request our demand for a trial by jury on the termination ... I'm asking that the Court continue any hearing on the Petition to Terminate the Parental Rights of [A.W.].
* * *
THE COURT: ... We're going to proceed on theit's going to be an effort at hearing it at any rate. I'm going to withhold any ruling until a week from now ...
G.L. and E.L. further argue A.W. should have filed a motion for continuance or a motion to strike the non-jury setting. We disagree. Objecting to a trial on the merits when a jury has been timely requested is sufficient to preserve error. Martin, 909 S.W.2d at 198 (citing Browning v. Holloway, 620 S.W.2d 611, 617 (Tex. App.-Dallas) (on motion for rehearing), writ ref'd n.r.e., 626 S.W.2d 485 (Tex.1981) (per curiam) (holding that plaintiffs did not waive their right to jury by participating in non-jury hearing where plaintiffs objected to the proceeding on the ground they were denied their right to jury trial)). Because A.W.'s request for jury trial was timely, the trial court abused its discretion in denying it.
We must now determine whether the trial court's error was harmless. The trial court's denial of a timely requested *196 jury trial is harmless error only if the record establishes that no material issues of fact exist and an instructed verdict would not have been justified. Halsell, 810 S.W.2d at 372. An involuntarily executed affidavit of relinquishment is a complete defense to a termination decree. Neal, 814 S.W.2d at 219. In view of the disputed facts surrounding A.W.'s signing of the affidavit, an issue of material fact exists and a directed verdict would not have been appropriate. Therefore, we find the trial court's denial of A.W.'s timely request for jury trial is not harmless error. A.W.'s first point of error is sustained. Accordingly, we reverse the judgment of the trial court and remand this case to that court for further proceedings consistent with this opinion.
NOTES
[1] Smith testified that A.W. obtained her name from Crookshire. According to Smith, Crookshire was taking care of A.W.'s other two children.
[2] G.L. testified that when she picked up the child, A.W., A.W.'s mother and sister, Vanessa, were there. G.L. testified that Vanessa asked her if the baby's name was going to change. G.L. testified that they all knew G.L. was hoping to make it a permanent arrangement.
[3] The child's father is not a party to this appeal.
[4] Although the sustaining of A.W.'s first point of error will result in reversal in the judgment and remand of the case, we must consider A.W.'s points of error requesting a rendition of the judgment before ordering a remand. See Tex.R.App. 43.3; Lone Star Gas Co. v. Railroad Comm'n of Tex., 767 S.W.2d 709, 710 (Tex.1989).
[5] A.W. does not challenge the trial court's finding on the best interest of the child.
[6] Recently, this court applied both the traditional and heightened standards of review in a legal sufficiency review, without either overruling this court's prior precedent or adopting the heightened standard of review in cases requiring the application of the clear and convincing evidence burden of proof. See In re K.R., 22 S.W.3d at 90-91. Other courts of appeals have expressly rejected a heightened standard of review in legal sufficiency challenges. See, e.g., Edwards v. Texas Dep't of Protective & Regulatory Servs., 946 S.W.2d 130, 137 (Tex.App.-El Paso 1997, no writ); In the Interest of L.R.M., 763 S.W.2d 64, 67 (Tex.App.-Fort Worth 1989, no writ); see also Hon. Bill Vance, The Clear and Convincing Evidence Standard in Texas: A Critique, 48 Baylor L.Rev. 391, 413-14 (1996). We are bound by prior precedent of this court. Guest v. Cochran, 993 S.W.2d 397, 404 n. 6 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Consequently, we decline to apply a heightened standard of review to our legal sufficiency analysis.
[7] In her seventh point of error, A.W. challenges the factual sufficiency of the evidence supporting the trial court's finding. However, because of our disposition of this case, it is not necessary for us to address A.W.'s seventh point of error, which seeks only remand relief.
[8] Although it was unclear in A.W.'s appellate brief, at oral argument, A.W.'s counsel clarified that her complaint about G.L., E.L., and Hoskins' failure to provide her with a copy of the affidavit of relinquishment is relevant to the issue of whether she signed it on the basis of G.L., E.L., and Hoskins' alleged misrepresentations. However, to the extent that A.W. is claiming that the affidavit is void because she was not provided with a copy of it at the time she signed it, any such argument is waived for failure to raise it in the trial court. See Tex.R.App.P. 33 .1.
[9] A.W. states she first obtained a copy of the affidavit of relinquishment on the way to the meeting at the CPS office, more than two weeks after she had signed it. Hoskins testified at trial that he could not recall whether he had provided A.W. with a copy of the affidavit of relinquishment the day she signed it. On appeal, G.L. and E.L. do not dispute A.W.'s claim that she did not receive a copy of it at the time she signed it.