IN RE W.M. AND A.L.M.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-028-CV

IN THE INTEREST OF 

W.M. AND A.L.M., CHILDREN 

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Ronald M., the biological father of W.M. and A.L.M., contests the trial court’s order terminating his parental rights.  In four points, appellant argues that the evidence was legally and factually insufficient to establish that he voluntarily relinquished his parental rights and that termination was in the best interests of the children.  We affirm.

II. Factual and Procedural Background
  

On September 6, 2005, the Department of Family and Protective Services (“DFPS”) received a referral alleging neglectful supervision of W.M., a two-year-old, and A.L.M., a one-year-old, by their parents, Erin C. and appellant.  During its investigation, DFPS discovered that both parents tested positive for methamphetamine.  Upon DFPS’s request, Erin and appellant attended several DFPS-sponsored service groups, including Drug and Alcohol Assessment, Breakthrough Christian Counseling, and Alcoholic’s Anonymous meetings.  At some point in late 2005, appellant began refusing to attend substance abuse programs. 

In January 2006, appellant began working in an oil field, but he lost the job that same month.  Erin, appellant, and the two boys were evicted from their home in March 2006 for failing to pay rent.  That same month, Erin again tested positive for methamphetamine and admitted to using drugs at the drilling site where appellant had worked.  When Erin received her drug test results, she stated that the boys had been asleep at that time, and she had not seen appellant use methamphetamine, but was “sure he has.”

Also in March 2006, DFPS completed a safety plan that placed the boys with the maternal grandparents, Teena and David C.  Later that month, appellant was arrested and incarcerated for unauthorized use of a motor vehicle.  On April 14, 2006, after appellant was released from jail, DFPS met with Erin and him.  During the meeting, appellant admitted that he had used methamphetamine “about three weeks” earlier.  After that meeting, DFPS was unable to reach appellant, as he never provided an address or phone number and never contacted DFPS on his own.  

On May 22, 2006, DFPS filed a Petition for Protection of Children, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship because appellant and Erin used methamphetamine drugs, failed to maintain a residence, and failed to complete most of the DFPS-sponsored programs.  In a hearing on June 5, 2006, the trial court ordered appellant and Erin to attend counseling, to attend parenting classes, to complete drug and alcohol assessments, and to participate in drug treatment programs.  Appellant failed to complete any of the ordered services, failed to appear for a status hearing in July 2006, and failed to appear for a permanency hearing in September 2006.

Teena and David C., the maternal grandparents, expressed an interest in adopting the boys, and on October 31, 2006, appellant and Erin signed affidavits of voluntary relinquishment of parental rights.  The affidavits were also signed by two witnesses and verified by a notary public.  Appellant was appointed trial counsel on December 7, 2006, and a final hearing was held on January 8, 2007, where appellant appeared but did not testify.  That same day, appellant and Erin signed the termination order as to both form and substance. 

Later that month, appellant filed a motion for new trial.  At the hearing on this motion, appellant testified that he signed the relinquishment affidavit only because of fraudulent representations by DFPS.  Appellant also alleged that he was never offered an attorney until the final hearing.  The trial court denied the motion; this appeal followed.

III.  Voluntariness of the Affidavit of Relinquishment

In his first two points, appellant argues that the trial court erred by terminating his parental rights based on his affidavit of relinquishment because the evidence is legally and factually insufficient to show that he executed the affidavit voluntarily and knowingly.  Appellant contends that his affidavit was executed as a result of fraud, deception, and overreaching.

A.  Applicable Law

A parent’s rights to “the companionship, care, custody, and management” of his or her children are constitutional interests “far more precious than any property right.”  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); 
In re M.S.
, 115 S.W.3d 534, 547 (Tex. 2003).  In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child’s right to inherit.  
T
EX
. F
AM
. C
ODE
 A
NN
. § 161.206(b) (Vernon Supp. 2006); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  
Holick
, 685 S.W.2d at 20-21;
 In re E.S.S.
, 131 S.W.3d 632, 636 (Tex. App.—Fort Worth 2004, no pet.).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  T
EX
. F
AM
. C
ODE
 A
NN
. §§ 161.001, 161.206(a); 
In re J.F.C.
, 96 S.W.3d 256, 263 (Tex. 2002).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. 
 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980); 
In re K.W.
, 138 S.W.3d 420, 425 (Tex. App.—Fort Worth 2004, pet. denied).  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.” 
T
EX
. Fam. Code Ann.
 § 101.007 (Vernon 2002).
 

The higher burden of proof in termination cases elevates the appellate standard of legal sufficiency review.  
 J.F.C.
, 96 S.W.3d at 266.  In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven.  
Id. 
at 265-66.  We must review all evidence in the light most favorable to the finding and judgment.  
Id. 
at 266.  This higher burden of proof also elevates the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
. at 25.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven.  
Id. 
 Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent’s parental rights would be in the best interest of the child.  
Id. 
at 28.    

Under the Texas Family Code, the trial court may terminate parental rights upon finding, by clear and convincing evidence, that the parent has “executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by this chapter” and that termination is in the best interest of the child.  
Tex. Fam. Code Ann.
 § 161.001(1)(K), (2); 
In re C.R.P.
, 192 S.W.3d 823, 825 (Tex. App.—Fort Worth 2006, no pet.); 
In re D.R.L.M.
, 84 S.W.3d 281, 296-98 (Tex. App.—Fort Worth 2002, pet. denied); 
In re V.R.W.
, 41 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2001, no pet.), 
disapproved on other grounds by J.F.C.
, 96 S.W.3d at 256.  Implicit in the family code is the requirement that the affidavit of voluntary relinquishment be voluntarily executed.  
V.R.W
., 41 S.W.3d at 192; 
Neal v. Tex. Dep’t of Human Servs
., 814 S.W.2d 216, 218-19 (Tex. App.—San Antonio 1991, writ denied).  Evidence that an affidavit of voluntary relinquishment was signed, notarized, witnessed, and executed in compliance with family code section 161.103 is prima facie evidence of its validity.  
Tex. Fam. Code Ann.
 § 161.103; 
V.R.W
., 41 S.W.3d at 190.

Once it has been shown by clear and convincing evidence that the affidavit of relinquishment was executed according to the requirements of section 161.103, courts have traditionally held that the affidavit may be set aside only upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of “coercion, duress, fraud, deception, undue influence, or overreaching.”  
In re Bruno
, 974 S.W.2d 401, 405 (Tex. App.—San Antonio 1998, no pet.); 
see D.R.L.M.
, 84 S.W.3d at 296. 
 The burden of proving such wrongdoing is on the party opposing the affidavit. 
 See D.R.L.M.
, 84 S.W.3d at 296-98.

B.  Analysis

Appellant asserts that Mary Leigh-Ann Riley, the family’s case worker, failed in her “duty” to warn him that by signing the affidavit, he would have no legal right to visit his sons or enforce the college and health care benefits that he believed to be guaranteed with the boys’ adoption by the maternal grandparents.  Such inaction on Riley’s part, argues appellant, constituted fraud, deception, and overreaching.  We disagree.  

At the termination hearing, Riley testified that appellant “had already decided on [his] own that [he] wanted to relinquish” his parental rights before she ever spoke with him about possible relinquishment.  Further, when appellant and Erin came to her office to discuss the relinquishment, Riley described the relinquishment and adoption processes.  Teena and David C., the boys’ maternal grandparents, wanted to adopt the boys; in the process of explaining this adoption, Riley told appellant that there was a possibility that Teena and David C. would provide the boys with health care and college benefits, but there was no guarantee.  Riley also asked appellant if he wanted an attorney before he signed the relinquishment affidavit; appellant declined this opportunity.
(footnote: 2)
 On October 31, 2006, while two witnesses were present, appellant signed the affidavit of relinquishment and had it notarized.  In the following months, appellant never attempted to revoke the affidavit.  Appellant’s trial counsel was appointed on December 7, 2006, and the final hearing on the termination was held on January 8, 2007.  Appellant did not testify at the final hearing or provide any other evidence or argument that he involuntarily signed the affidavit because of fraud, deception, or overreaching.  Instead, appellant signed the order terminating his parental rights under the notation, “APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE,” even though his attorney had told him not to sign anything.

At the hearing on his motion for new trial, appellant testified that he only signed the termination order because he thought it was a document stating that he was present for the final hearing.
  Appellant also stated that he did not take the stand in the final hearing because he was in tears and could not talk when he was called.  However, in evaluating the sufficiency of the evidence presented at trial, we do not consider new facts and testimony presented in the motion for new trial.  
See Barker v. Eckman
, 213 S.W.3d 306, 313 (Tex. 2006) (providing that a court conducting a factual sufficiency review of the evidence may only review the evidence according to the jury charge given and the jury findings in response to that charge); 
Dow Chem. Co. v. Francis
, 46 S.W.3d 237, 241 (Tex. 2001) (reviewing evidence admitted 
at trial
 when conducting a sufficiency review).    

Appellant relies on 
Jones v. Texas Department of Protective and Regulatory Services
 to support his argument that Riley and the DFPS violated its duty to warn him about the rights he would give up by signing the affidavit of relinquishment.  
85 S.W.3d 483, 493 (Tex. App.—Austin 2002, pet. denied).  However, 
Jones 
is distinguishable from this case in several ways.  
Id.
  First, 
Jones 
involved a bill of review, and the appellate court there disregarded all evidence contrary to Jones’s claim that the affidavit was wrongfully procured.  
Id. 
 Thus, as long as there was a scintilla of evidence to support Jones’s claims, a determination had to be made in her favor.  
Id.

Further, in 
Jones
, the mother had been in DFPS’s care from the age of fourteen, when she became pregnant.  
See id. 
at 486.  She attended special education classes in school and had been treated for depression.  
Id. 
at 492.  Jones signed the affidavit of relinquishment when she was eighteen.  
Id
.  On the day Jones signed the relinquishment, she asked for her attorney but was told by a DFPS employee that the attorney could not be reached.  
Id. 
at 492.  The DFPS employee also told Jones that DFPS had spoken with her attorney, and the attorney said to sign the affidavit. 
 Id. 
 Further, a DFPS employee told Jones that if she signed the reliquishment, her daughter would be placed with her cousin, and Jones would be allowed to see her “once in a while.”  
Id. 
at 492-93.  However, a DFPS employee also told Jones that if she did not sign the affidavit of relinquishment, DFPS would give the child to a stranger.  
Id. 
at 493.  After Jones signed the affidavit, she discovered that her daughter was not going to be adopted by her cousin; Jones immediately filed a bill of review.  
Id.
  Thus, the facts in Jones are significantly different than the facts here.   

We hold that there is clear and convincing evidence that appellant executed the affidavit of relinquishment voluntarily, and there is no evidence that appellant’s execution of the affidavit of relinquishment was the result of coercion, duress, fraud, or any other form of wrongdoing.  
T
EX
. F
AM
. C
ODE
 A
NN
. §§ 161.001(1)(K), (2), 161.206(a); 
 J.F.C.
, 96 S.W.3d at 263
; 
D.R.L.M.
, 84 S.W.3d at 296-98; 
V.R.W.
, 41 S.W.3d at 190
, 192.
  While appellant may have been unclear about how the adoption benefits and visitation worked, the record shows that he approached DFPS wanting to relinquish his parental rights before even knowing the possible benefits of adoption.  Further, DFPS asked him if he wanted an attorney, and he declined the opportunity.  Appellant did not try to revoke his relinquishment affidavit in the two months prior to the final hearing, and even when represented by counsel, appellant signed the order terminating his parental rights against counsel’s recommendation.  
See Lumbis v. Tex. Dep’t of Protective & Regulatory Servs
., 65 S.W.3d 844, 850-51 (Tex. App.—Austin 2002, pet. denied) (holding that when mother discussed the consequences of an affidavit of relinquishment with her attorney, the affidavit of relinquishment was voluntarily signed even though mother was emotionally upset and believed that she might be able to have post-adoption contact with her children at the time she signed it).  Applying the appropriate standard of review, we conclude that the evidence was legally and factually sufficient to establish that appellant executed the affidavit of relinquishment voluntarily and knowingly.  
J.F.C.
, 96 S.W.3d at 266;
 C.H.
, 89 S.W.3d at 25.  Accordingly, we overrule appellant’s first two points.  

IV.  Best Interest of the Children

In his third and forth points, appellant argues that the trial court erred by terminating his parental rights because the evidence is legally and factually insufficient to establish that termination is in the best interest of the children.  We disagree.  

A.  Applicable Law

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include 

(1) the desires of the child,

(2) the emotional and physical needs of the child now and in the future, 

(3) the emotional and physical danger to the child now and in the future, 

(4) the parental abilities of the individuals seeking custody, 

(5) the programs available to assist these individuals to promote the best interest of the child,

(6) the plans for the child by these individuals or by the agency seeking custody, 

(7) the stability of the home or proposed placement, 

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and 

(9) any excuse for the acts or omissions of the parent. 

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976); 
In re M.N.G., 
147 S.W.3d 521, 539 (Tex. App.སྭFort Worth 2004, pet. denied).  These factors are not exhaustive.  Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
C.H.
, 89 S.W.3d at 27
; 
M.N.G.
, 147 S.W.3d at 539.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  
C.H
., 89 S.W.3d at 27; 
M.N.G.
, 147 S.W.3d at 539.  On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
C.H
., 89 S.W.3d at 27; 
M.N.G.
, 147 S.W.3d at 539.

In addition to the above, a parent’s inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at the child’s best interest.  
In re C.A.J.
, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.).  Again, we apply the elevated standard of review to determine whether the evidence at trial met the clear and convincing burden of proof at trial. 
 J.F.C.
, 96 S.W.3d at 266; 
C.H.
, 89 S.W.3d at 25; 
see In re E.M.N.
, 
221 S.W.3d 815, 827-28 
(Tex. App.—Fort Worth 2007, no pet.).  

There are several reasons why the trial court’s best interest finding was supported by clear and convincing evidence.  First, appellant voluntarily signed the affidavit relinquishing his parental rights, which provided, “Termination of the parent-child relationship is in the best interest of the children.”  Further, appellant signed the trial court’s order terminating his parental rights, thereby approving and consenting to the order “as to both form and substance.”  In paragraph 7.1 of the order, the trial court found “by clear and convincing evidence that termination of the parent-child relationship . . . is in the children’s best interest.”

The record supports this conclusion.  While the boys were living with him in the fall of 2005, appellant tested positive at least once for methamphetamine, and even after DFPS began its investigation, appellant continued to use drugs.  Appellant failed to complete most of the DFPS-sponsored services, including the substance abuse programs, and failed to keep a steady job or home.  In March 2006, after DFPS placed the boys with their maternal grandparents, appellant was arrested and incarcerated for unauthorized use of a motor vehicle.  The next month, DFPS met with appellant, and he admitted to recent use of methamphetamine.  After that meeting, DFPS was unable to reach appellant, as he never provided an address or phone number and never contacted DFPS on his own. 

In a hearing on June 5, 2006 regarding the status of appellant and his relationship with the boys, the trial court ordered appellant to attend counseling, to attend parenting classes, to complete drug and alcohol assessments, and to participate in drug treatment programs.  Appellant failed to complete any of the ordered services and failed to appear for a status hearing on July 31, 2006.  Appellant also failed to appear for a permanency hearing on September 19, 2006.

DFPS reported that the maternal grandparents, the hopeful adoptive parents, have provided the boys with a safe and stable environment and are able to meet their needs.  Further, “[t]he boys have been living with their grandparents off and on since birth,” so their adjustment with them has been minimal.  Importantly, the “boys seem to be thriving in their grandparents[’] care.”

Based upon our review of the entire record, we conclude that the trial court could have reasonably formed a firm conviction or belief that termination of appellant’s rights was in the boys’ best interests.  
C.H
., 89 S.W.3d at 27; 
M.N.G.
, 147 S.W.3d at 539.  Accordingly, we hold that the evidence is legally and factually sufficient to support the best interest findings, and we overrule appellant’s third and forth points.

V.  Conclusion

Having overruled appellant’s four points, we affirm the trial court’s order terminating appellant’s parental rights to W.M. and A.L.M. 

TERRIE LIVINGSTON

JUSTICE

PANEL F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: June 28, 2007 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Even though appellant states in his brief that the alleged “deception and overreaching might have been negated had the Court . . . appointed an attorney to represent [him] before he signed the affidavit of relinquishment, rather than five weeks later,” appellant did not raise an issue complaining of his lack of counsel at the final hearing, at the motion for new trial, or on appeal.