

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00181-CV

IN THE INTEREST OF
P.L.G.M., A CHILD

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

The Department of Family and Protective Services (DFPS) removed P.L.G.M. from Mother, who timely requested a jury trial. DFPS returned the child to Mother several months later, but after Mother waived her jury trial, DFPS removed P.L.G.M. again. The trial court then denied Mother's request to revoke

---

[1]*See* Tex. R. App. P. 47.4.

her jury-trial waiver, despite granting a continuance, and ultimately terminated Mother's parental rights to P.L.G.M.[2]

In her first of five issues, Mother argues that the trial court abused its discretion by denying her a jury trial. We agree, reverse the trial court's judgment terminating Mother's parental rights to P.L.G.M. without reaching Mother's remaining four issues, and remand the case for a new trial. *See* Tex. R. App. P. 47.1.

## A. Removal

In February 2011, Father's assault on Mother put her in the hospital. DFPS closed its investigation after the caseworker found that the "risk factors" were controlled—Father had been incarcerated,[3] and Mother no longer tested positive for drugs. Several months later, in October 2011, Denton County Child Protective Services (CPS) received a referral alleging that Mother had been using methamphetamine. Mother signed an acknowledgment that she had used methamphetamine on October 6, 2011. CPS removed P.L.G.M. from Mother and placed the child first with Father's mother and then with a foster family.

---

[2]The trial court also terminated Father's parental rights to the child, but Father does not appeal.

[3]Father subsequently pleaded guilty in June 2011 to assault-family violence in exchange for three years' confinement.

On November 3, 2011, DFPS filed its original petition in this case. Mother filed her answer and jury demand on November 23, 2011, and the case was originally set for a jury trial on March 18, 2013.

On December 14, 2011, the trial court issued temporary orders and set out all of the services Mother would be required to complete over the course of the case: weekly counseling sessions; parenting classes; a "Choosing Healthy Relationships" class; a drug and alcohol assessment; and random drug tests (saliva, urine, and hair follicle). It also set out the requirements she had to meet over the course of the case: establish and maintain safe, stable, and appropriate housing and suitable employment for at least six months and through the pendency of the suit; refrain from engaging in criminal activities and from unsupervised contact with a child under age sixteen; comply with each requirement set out in the service plan or any amended service plan; have one hour of supervised visitation per week at the CPS office; and pay $25 each month in medical support.

## B. Reunification

Between November 23, 2011, and the child's return to Mother on November 18, 2012, Mother completed all but the services that had been continued and extended by CPS such as counseling. At that time, all concerned parties—DFPS, CPS, the court-appointed special advocate (CASA) volunteer, the child's ad litem attorney, and Mother—agreed that P.L.G.M. should be returned to Mother.

3

## C. Second Removal

On March 7, 2013, the trial court held a permanency hearing and hearing on DFPS's emergency motion to modify temporary orders, in which DFPS again sought to remove P.L.G.M. from Mother. The CPS supervisor testified that DFPS had recently become aware of Mother's phone contact with Father after he had been bench-warranted back to Denton County for the termination trial, that their phone conversations had raised safety concerns, and that removing P.L.G.M. again was in the child's best interest. The CASA volunteer also testified that removing P.L.G.M. from Mother was in the child's best interest.

At the March 7, 2013 hearing, Mother's counsel asked DFPS's attorney if it was clearly seeking to terminate Mother's parental rights because "that wasn't what you were seeking before," and she asked for updated discovery. On March 8, 2013, the trial court entered an injunction prohibiting Mother from any contact with Father and from allowing any contact between Father and P.L.G.M., among other things, but it did not order the child's removal. The trial court stated that it would postpone making a ruling until the next day at docket call.

Three days after the trial court entered the injunction, Mother, who had been raised in the foster system herself, told a friend that DFPS was seeking to terminate both Father's rights and her rights to P.L.G.M. and asked whether she would be willing to adopt P.L.G.M. The friend indicated that her niece might be interested in adopting the child and arranged a meeting in conjunction with a family dinner. Without first seeking permission from CPS, Mother dropped off the

4

child at her friend's house on March 13, 2013, and the child spent the night with the friend's family. There are no allegations that anything untoward happened to the child or with the family in question. Mother picked the child up the next day.

Mother's attorney filed a withdrawal of jury demand at 1:01 p.m. on March 15, 2013, the Friday before the originally scheduled jury trial. At some point that same day, Mother's friend contacted CPS to ask about P.L.G.M.'s placement, and at 3:50 p.m., the friend's niece filed a petition in intervention in the termination case, seeking to adopt P.L.G.M. CPS filed an application for a subpoena for Mother's friend at 4:09 p.m. and removed P.L.G.M. from Mother's home at 6:12 p.m.

## D. Termination

The following Monday, March 18, 2013, the trial court called the case for the final hearing, and Mother's counsel informed the trial judge that she was not ready to proceed to the final trial. She pointed out that because DFPS had removed the child on the preceding Friday, the trial court needed to set a new dismissal date and a new trial date. The trial court then set a new dismissal date of May 31, 2013.

Mother's counsel agreed that they were "proceeding with a bench trial," but pointed out to the trial judge that "as you may recall, your Honor, 11 days ago we were not scheduled for termination on my client, and that—that is very short notice to prepare for a final trial in a termination anyway," pointing out that the case had 5,000 pages of records and other evidence. When Mother's attorney

5

informed the trial court that she had not had adequate time to prepare, the trial court gave her a one-day continuance and stated that the trial would resume the next morning. The trial court also heard DFPS's motion to strike the petition in intervention, which it granted.

When the trial court called the case the next day, March 19, 2013, Mother's counsel filed a motion to revoke the waiver of her jury trial, a motion to extend the case, and a motion for continuance.

With regard to the revocation of the jury trial waiver, Mother's counsel argued "that facts changed considerably" after she had filed the waiver and that it would have changed her client's opinion "if she knew that her child was going to be removed that very evening after we filed that." DFPS argued that it had already been moving forward on the termination trial and that Mother had been aware of this when she filed her jury waiver. When DFPS pointed out that Mother's counsel had confirmed the day before that it was going to be a bench trial, Mother's counsel replied,

> And [Mother] had not spoken with me about that. We had talked 15 minutes on the phone, and most of the discussion was did she need to appear—because she had been in the hospital until 11:30 the night before—and briefly discussed the facts that I knew of about the removal. Because I had received an email from [DFPS's attorney] at 7:30 in the morning on Monday, and then I called my client. I mean, that's the only conversation we had since the removal. I hadn't even spoken to her all weekend. So we didn't even discuss whether it was going to be a bench trial or a jury trial.

Mother's counsel said that Mother told her after they appeared in court that she wanted her jury back.

6

The trial court denied the revocation of waiver of jury trial, stating,

> Had you told me yesterday morning, I could have had a jury ready to go for trial today. But because I was not informed of this until now, when we've already canceled the jury, then I'm going to deny the revocation of waiver of jury trial and go forward with the bench trial.[4]

The trial court nonetheless granted a continuance until March 25 to allow Mother's counsel more time to prepare for the bench trial. Mother's counsel once more reurged the jury request, but the trial court stated, "I believe that you still have to have 30 days' notice."[5] The bench trial began on March 25, continued on March 26 and 27, resumed on April 10, and finally concluded on April 23—over thirty days after Mother sought to revoke the waiver of her jury trial—with the termination of Mother's parental rights to P.L.G.M.[6] Nothing in the record shows that the trial court could not have held a jury trial prior to the May 31, 2013 dismissal date.

---

[4]Although DFPS argues in its brief that this statement amounted to the trial judge stating that a jury trial would "have disrupted the trial court's schedule by again delaying the trial," we disagree, particularly when, after making this statement, the trial judge subsequently granted a continuance and reset the case for trial a week later to avoid Mother raising an ineffective-assistance-of-counsel claim that, if successful, would require the case to be retried.

[5]As set out below, while the general rule is thirty days' notice, an untimely jury demand may be granted depending on the circumstances of the case. *See In re G.R.M.,* No. 04-11-00073-CV, 2011 WL 2473238, at *6 (Tex. App.—San Antonio June 22, 2011, no pet.) (mem. op.).

[6]The trial court terminated Mother's parental rights, finding that she had endangered the child and that termination of Mother's parental rights was in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (2) (West Supp. 2012).

7

**E. Termination of Parental Rights and the Right to a Jury Trial**

"A parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982)); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *E.R.*, 385 S.W.3d at 554 (citing *Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Id.*; *Holick*, 685 S.W.2d at 20–21.

The right to a jury trial is guaranteed by the Texas Constitution. *See* Tex. Const. art. I, § 15. In civil cases, this right arises only when a party has demanded a jury trial and paid the applicable fee. *In re J.N.F.*, 116 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A request for a jury trial made at least thirty days before the date set for trial is presumed to have been made a reasonable time before trial. Tex. R. Civ. P. 216; *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991). While it is within the trial court's discretion to

8

deny a jury trial if the party requesting it does so less than thirty days before trial, an untimely jury demand may be granted if the request will not interfere with the court's docket, delay the trial, or injure the opposing party. *G.R.M.*, 2011 WL 2473238, at \*6; *Monroe v. Alts. in Motion*, 234 S.W.3d 56, 70 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable, *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004), and we examine the entire record when the trial court denies a jury demand. *In re A.H.*, No. 12-10-00246-CV, 2011 WL 5166400, at \*1 (Tex. App.—Tyler Oct. 31, 2011, pet. denied) (mem. op.) (citing *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)).

## F. Analysis

Mother made her original jury trial request well in advance of the thirty-day deadline in rule 216, *cf. G.R.M.*, 2011 WL 2473238, at \*6, and the unusual timing and the circumstances of DFPS's actions immediately after Mother relinquished that right raise some concerns about due process in light of the strict scrutiny that we apply to termination proceedings. *See Holick*, 685 S.W.2d at 20–21.

Additionally, although the trial court denied the request to reinstate the jury trial—apparently under the impression that to obtain a jury trial "you still have to have 30 days' notice," without accounting for the exception to that rule set out above—it both extended the case's dismissal date and granted a continuance.

9

*Cf. Low*, 221 S.W.3d at 614 (stating that an appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles). Both of these actions tend to show that reinstating the jury trial would not have unduly interfered with the docket, delayed the trial, or injured the opposing party, particularly as the trial ultimately concluded over thirty days after Mother reurged her jury request. *See In re L.R.*, 324 S.W.3d 885, 889–90 (Tex. App.—Austin 2010, orig. proceeding) (stating that the trial court did not abuse its discretion by granting parents' oral request for a jury trial when there was no indication that it would unduly interfere with the court's docket, delay the trial, or injure the opposing parties). Therefore, we conclude that, particularly given the constitutional magnitude of the rights at issue, Mother's jury trial should have been reinstated and the failure to do so, despite extending the case's dismissal date and granting a continuance, constituted an abuse of discretion. *See, e.g.*, *In re J.C.*, 108 S.W.3d 914, 917 (Tex. App.—Texarkana 2003, no pet.) (holding jury trial request timely when circumstances—late appointment of counsel—made compliance with rule 216 impossible because "[t]o hold otherwise has the potential of opening the door to repeated denial of a jury trial to countless other indigent parents who appear in the various courts throughout this State in opposition to the termination of their parental rights").

A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified. *J.N.F.,* 116 S.W.3d at 437 ("In view of the disputed facts surrounding

10

appellant's fitness as a parent, an issue of material fact exists and a directed verdict would not have been appropriate."); *see also In re M.A.*, No. 14-05-00579-CV, 2007 WL 2873307, at *1–3 (Tex. App.—Houston [14th Dist.] Oct. 4, 2007, no pet.) (mem. op.) (holding that no evidence rebutted the presumption that mother made jury trial request a reasonable time before trial and conflicting evidence existed regarding the extent of her continued drug use, her ability to provide for the child, and whether she or grandparent would be a better caretaker); *In re V.R.W.*, 41 S.W.3d 183, 195–96 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (reversing termination judgment when, among other things, appellant filed jury trial request when it became apparent that there were material fact issues to be tried), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 n.39 (Tex. 2002). During the five days of trial, and among the many issues presented, there was conflicting evidence regarding Mother's ability and intent to be protective of the child—a major material fact issue and one that pertains to the grounds for termination found by the trial court and challenged by Mother on appeal. *Cf. In re M.V.G.*, No. 10-09-00054-CV, 2010 WL 730366, at *9 (Tex. App.—Waco Mar. 3, 2010, no pet.) (stating that when father failed to challenge one of the termination findings, he could not contend that a material fact issue existed on that termination ground or show that error in denying his jury request required reversal). We therefore sustain Mother's first issue and do not reach her remaining issues.

Having sustained Mother's dispositive issue, we reverse the trial court's judgment terminating her parental rights to P.L.G.M. and remand the case for a new trial.

PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DELIVERED:  November 7, 2013